GEORGE W. SMITH et al., Appellants, *v.* WILBUR H. PROCTOR et al., Trustees, etc., Respondents.

Under the provision of the act consolidating the acts in reference to public instruction (§ 19, chap. 555, Laws of 1864, as amended by chap. 567, Laws of 1875, and chap. 528, Laws of 1881), which provides that "whenever a majority of all the inhabitants of any school district entitled to vote, to be ascertained by taking and recording the ayes and noes of such inhabitants attending" a school meeting, shall determine that a sum required for building a new school-house shall be raised by installments, the same may be so raised, and authorizes the trustees of the district to borrow so much of the sum voted as may be necessary, and to issue bonds therefor, a majority of the qualified voters of the district is not required; nor is a majority of those at a school meeting; the statute simply requires a majority of the qualified voters in attendance, pursuant to legal notice, who actually vote upon the question by answering "aye" or "no" as the names of all present are called.

Where, therefore, it appeared that the number of qualified voters in a school district was three hundred, that at a school meeting, of which due notice had been given, which was attended by one hundred and fifteen of such voters, a resolution authorizing the raising of a sum to be expended in building a new school-house, and directing the trustees to issue district bonds to the amount specified, payable in installments, was adopted by a vote of thirty-four ayes to thirty-three noes, the other voters present not voting, *held,* that the resolution was legally adopted; and so, that an action to restrain the issuing of the bonds or the collection of a tax to pay interest thereon was not maintainable.

(Argued November 30, 1891; decided December 15, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order

made October 25, 1889, which affirmed a judgment in favor of defendants entered upon a decision of the court on trial at Special Term.

This action was brought by certain taxpayers of school district number two of the town of Newtown, Queens county, against the defendants, as the trustees and the collector of said district, to restrain said trustees from issuing bonds for the erection of a new school-house in accordance with a resolution adopted at a district meeting, and to restrain said collector from collecting a tax already levied for the purpose of paying one year's interest on such bonds.

The facts, so far as material, appear in the opinion.

*John E. Parsons* for appellant. The proceeding rests wholly upon the statute, is in derogation of the common law, and affects the rights and property of individuals. The statute must be strictly pursued. (*Town of Solon* v. *W. S. Bank*, 114 N. Y. 122, 130 ; *Rich* v. *Keyser*, 54 Penn. St. 86 ; *P. R. T. Co.* v. *Dash*, 125 N. Y. 93 ; *State of Missouri* v. *Winkelmeier*, 35 Mo. 103.) It is the policy of the law in this state to give effect to provisions intended for the protection of municipalities against any attempt by a small minority of inhabitants to create indebtedness. (*Starin* v. *Town of Genoa*, 23 N. Y. 439 ; *Gould* v. *Town of Sterling*, Id. 456 ; *Town of Venice* v. *Woodruff*, 62 id. 462 ; *People ex rel* v. *Allen*, 52 id. 538 ; *Town of Springport* v. *Savings Bank*, 75 id. 397 ; *Town of Solon* v. *W. S. Bank*, 114 id. 122 ; *Walnut* v. *Wade*, 103 U. S. 683 ; *Carroll County* v. *Smith*, 111 id. 556 ; *County of Cass* v. *Johnston*, 95 id. 360 ; *Rich* v. *Town of Mentz*, 134 id. 632.)

*M. D. Gould* for respondents. Section 19, article 2, title VII, of the General School Laws requires the vote of a majority of the electors present and voting only, and not a majority of all the legal voters of the district. (2 Burr. 1021 ; 7 Ad. & El. 454.)

VANN, J.   The only question brought before us by this appeal is whether the resolution to bond the district was adopted by a majority of the qualified voters, within the meaning of the statute governing the subject.

The trial court found that there were three hundred residents of the district entitled to vote at school meetings at the time the resolution was adopted, and that all of them had been duly notified of the meeting and its purposes, which included, by specific mention, the voting of " a tax to be raised by install- ments   *   *   *   to be expended in the erection of " a new school-house.   At a meeting held only a few days before it had been determined, by a vote of sixty-nine to forty-seven, that it " was advisable to erect a new school building," and a committee was thereupon appointed to procure information respecting the site, cost, etc., with instructions to report at a future meeting.   An adjournment was then taken, and on the adjourned day, one hundred and fifteen voting inhabitants were present, when the resolution in question was adopted by a vote of thirty-four for, to thirty-three against the same, only sixty-seven having voted upon the question.

The statute regulating the course to be pursued in order to issue valid bonds is as follows :

" Whenever a majority of all the inhabitants of any school district entitled to vote, to be ascertained by taking and record- ing the ayes and noes of such inhabitants attending at any annual, special or adjourned school district meeting, legally called or held, shall determine that the sum proposed and provided for in the next preceding section shall be raised by installments, it shall be the duty of the trustees of such district, and they are hereby authorized to cause the same to be raised, levied and collected in equal installments in the same manner and with the like authority that other school taxes are raised, levied and collected, and   *   *   *   whenever a tax shall have been voted to be collected in installments for the purpose of build- ing a new school-house, to borrow so much of the sum voted as may be necessary at a rate of interest not exceeding six per cent, and to issue bonds or other evidences of indebtedness

therefor, which shall be a charge upon the district and be paid at maturity, and which shall not be sold below par." (L. 1864, c. 555, p. 1245, § 19; L. 1875, c. 567, p. 642, § 18; L. 1881, c. 528, p. 706, § 2.)

As the thirty-four electors who voted in favor of the proposition were less than a majority of the one hundred and fifteen qualified voters who attended the meeting, it is contended in behalf of the plaintiffs that the resolution did not receive the majority required by statute, and hence that the trustees were without lawful authority to issue the bonds. The argument is conclusive, unless the legislature has provided some means of ascertaining a majority of the legal voters other than a simple enumeration of all the qualified voters of the district, or even of all who attended the meeting.

An analysis of the statute suggests the inquiry whether it requires a majority of all entitled to vote, or a majority of all present and entitled to vote, or a majority of all present and entitled to vote and actually voting? The answer to this question is to be found in the words " to be ascertained," as used in the statute. What is to be ascertained? Obviously, the majority required to make the determination. How is it to be ascertained? The statute answers: " By taking and recording the ayes and noes of such inhabitants attending; " that is, as attend the meeting. How is a vote by ayes and noes taken and recorded? By calling the names of those present and recording such as vote " aye " as in favor of and such as vote " no " as opposed to the pending resolution. As those who do not vote cannot be recorded as voting, the majority must be determined by comparing the number of those who vote " aye " with the number of those who vote " no." Those who did not vote at all cannot be recorded as voting " no," because they did not vote " no," and to so record them would falsify the record. When a vote is taken under a statute which provides that a majority is to be ascertained by taking and recording the ayes and noes of those present at the meeting, we think that those who do not respond as their names are called should not be counted at all, and that cer-

tainly they should not be counted as if they had voted " no."
The rule of the common law pertaining to the subject, as
declared by Lord MANSFIELD, is that " whenever electors are
present and do not vot at all, they virtually acquiesce in the
election made by those who do;" (*Oldknow* v. *Wainwright,*
2 Burr. 1017, 1021); and by Lord DENMAN, that a vote by a
majority of a meeting means " a majority of those who choose
to take a part in the proceedings of the assembly." (*Gosling*
v. *Veley,* 7 Ad. & Ell. [N. R.] 406, 456.)

The language of the Supreme Court of the United States
in a recent case has a bearing upon the subject. Speaking
through its chief justice, that learned court said that " all
qualified voters, who absent themselves from an election duly
called, are presumed to assent to the expressed will of the
majority of those voting, unless the law providing for the
election otherwise declares." (*County of Cass* v. *Johnston,*
95 U. S. 360, 369.) For many years it has been the established
policy of the state to cherish common schools, and for this
purpose it annually expends large sums of money. The statute,
of which the section under consideration forms a part, is an
elaborate and comprehensive act, designed to furnish instruc-
tion free of expense to all the children in the state. Great
care is taken to provide for the erection of suitable buildings
for school purposes, and if a district needs a new school-house
and will not voluntarily build one, agencies are provided by
which it may be compelled to build one, even against the
wishes of a majority of the taxpayers. (L. 1887, c. 592, p.
805, § 1.) The statute should receive a reasonable construc-
tion, keeping in view its general purpose to promote the
efficiency of the common schools. It would not be reasonable
to hold that the majority required is an absolute majority of
all the qualified voters of the district, because the statute does
not so command, and, on that basis, it would be difficult, if not
impossible, to tell whether a resolution had been carried or not.
No enumeration or registration of voters is provided for, and
the qualifications of persons entitled to vote at school meetings
differ materially from those of electors at general elections.

Hence a dangerous question of fact would always be open, and the value of the bonds would be seriously affected thereby. Prudent men would hesitate before investing in securities resting on such a precarious foundation.

So, as we think, it would be unreasonable to hold, in the absence of an express provision to that effect, that a majority is required of all who were present at the meeting, whether they voted or not, as this also might leave the result uncertain and invite controversy. By following the plain language of the statute and ascertaining a majority by comparing the affirmative and negative votes as actually given and recorded, these difficulties are avoided and the beneficent aim of the legislature is accomplished. This is the construction which has been uniformly given to the section under review by the department of public instruction, and is in accordance with the general usage that has followed its rulings. (Code of Public Instruction, p. 263.) It does not permit the absent or indifferent to neutralize the efforts of the public spirited and enterprising, but compels everyone, who would make his influence effective, to attend the meeting and vote in the manner provided by law.

In order to adopt a resolution such as that under consideration, the statute, as we interpret it, requires simply a majority of the qualified voters in attendance, pursuant to legal notice, who actually vote upon the question submitted by answering "aye" or "no," as the names of all present are called.

We think that the complaint was properly dismissed, and that the judgment appealed from should be affirmed, with costs.

All concur, except Parker, J., dissenting.

Judgment affirmed.