TINKEL, APPELLANT, v. GRIFFIN ET AL., RESPONDENTS.

·(No. 1,741.)

(Submitted January 28, 1902.   Decided April 28, 1902.)

*Elections — Counties — Indebtedness — Submission of Question to Electors—Form of Ballots—Majority Required.*

1.   Constitution, Art. XIII, Sec. 5, prohibits any county from incurring any indebtedness for any single purpose, exceeding $10,000, without the approval of a majority of the electors voting at an election to be provided by law.   Political Code, Sec. 4270, authorizes the county commissioners to submit such question to vote.   Section 4272 provides for the giving of notice of such election, and provides that the election shall be in the manner prescribed by law in regard to the submission of questions under the general election law.   Section 4273 only requires that there shall be printed on the ballots the words "For the Loan" and "Against the Loan."   *Held,* that ballots so printed in such an election were sufficient, without further specifying the purpose and nature of the proposed loan, as Political Code, Sec. 1354, requiring questions to be voted on to be presented to the people in such a manner as to enable them to vote thereon in the manner provided in the title in which the section is found does not apply thereto.

2.   Constitution Art. XIII, Sec. 5, prohibits counties from contracting an indebtedness exceeding $10,000, for any purpose, without the approval of a majority of the electors voting at elections to be provided by law.   Political Code, Sec. 4270, authorizes the county commissioners to submit such question to vote.   *Held,* that a favorable majority of all the votes cast on the question of incurring the indebtedness, at a general election at which the question is submitted, is sufficient to authorize the indebtedness, though such majority is not a majority of all the electors voting at such election.

*Appeal from District Court, Flathead County; D. F. Smith, Judge.*

INJUNCTION by L. Tinkel against W. H. Griffin and others, board of county commissioners of Flathead county, to restrain a bond issue.   From a judgment denying an interlocutory injunction, the plaintiff appeals.   Affirmed.

*Messrs. Foot & Pomeroy,* for Appellant.

·Cited:   *Howland* v. *Board of Supervisors,* 109 Cal. 152; *Belknap* v. *Louisville,* 36 S. W. 1118, 34 L. R. A. 256; *People* v. *Berkley,* 102 Cal. 298; *State* v. *Babcock,* 17 Neb. 188;

*State* v. *Foraker,* 46 Ohio State, 677; *People, Wheaton* v. *Wiant,* 48 Ill. 263; *Everett* v. *Smith,* 22 Minn. 53; *State, Jones* v. *Lancaster County Com'rs,* 6 Neb. 474; *State* v. *Benton,* 29 Neb. 460; *Duke* v. *Brown,* 96 N. C. 127; *State* v. *Francis,* 95 Mo. 44.

*Mr. James Donovan, Attorney General,* for Respondents.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

At the general election held on November 6, 1900, there was submitted to the electors of Flathead county the question whether the board of commissioners of the county should issue its bonds to secure a loan of $55,000 to create a fund for the purpose of building and furnishing a county court house and jail. Upon canvassing the returns of the vote cast upon this question, the commissioners declared that the proposition to secure the loan had been approved by the requisite majority, and were proceeding to issue and sell the bonds under the authority thus assumed to have been given. Thereupon this action was brought by the plaintiff, an elector and taxpayer of the county, to enjoin further proceedings in the matter on the grounds that the question had not been submitted to the electors in the manner prescribed by the statute, and that less than the required number of those voting at the election had signified their approval. Upon the filing of the complaint, application was made to the district court for an injunction *pendente lite.* The application having been denied, the plaintiff appealed.

1. It is argued by counsel that the election was invalid for the reason that the ballot prepared by the county clerk did not sufficiently set forth the question to be submitted to the electors, in that it was not printed upon the ballot at length, immediately over the spaces where the electors were to indicate their

preference.   The form of the ballots, so far as concerns the present inquiry, was as follows:

| | For the Loan |
|---|---|
| | Against the Loan |

It is admitted that due notice was published as required by statute; but it is insisted that the statute also requires any question submitted to the electors of the state, or of any division thereof, to be printed in full upon the ballot in the same way and in the same relative position as the name of a particular office, so that a voter may have it before him when he marks his ballot, and that, unless this requirement is observed, the election is invalid.

Section 1354 of the Political Code, cited in support of this contention provides:   "Whenever the secretary of state has duly certified to the county clerk any question to be submitted to the vote of the people, the county clerk must print in  the regular ballot, 'n such form as will enable the electors to vote upon the question so presented in the manner in this title provided.   The county clerk must also prepare the necessary ballots whenever any question is required by law to be submitted to the electors of any locality, and any of the electors of the state generally, except that as to all questions submitted to the electors of a municipal corporation alone, the city clerk must prepare the necessary ballots.   *   *   *" So far as this provision refers to the printing upon the ballot of the question submitted, its meaning is not clear.   As first enacted by the legislature in the Code of 1895, it read:   "Whenever the secretary of state has duly certified to the county clerk any questioin," etc.,   "*  *  * the county clerk must print on the regular ballot the question in such form as will enable the electors to vote," etc. It was amended by a subsequent Act of the same session (Act March 19, 1895), from which the section as it now stands was taken.   The omission from the amended Act of the words "the

question" was probably by inadvertence, since the active verb "print," in the present reading, is left without an object. If these words be supplied, as they doubtless should be, the sense is made clear, as far as concerns questions to be submitted to the electors of the state at the general election. It is only by inference that the provision may be extended to questions submitted to the electors of a county. For the purpose of this case, we shall concede that this would be the proper inference to be drawn from the language used, and that it would control in the absence of special provisions touching matters of local concern. There are, however, special provisions with reference to the issuance of bonds by counties, enacted under the authority of the constitution, and these must be deemed controlling upon this subject. The Constitution, Article XIII, Section 5, provides: "* * * No county shall incur any indebtedness or liability for any single purpose to an amount exceeding ten thousand dollars ($10,000) without the approval of a majority of the electors thereof, voting at an election to be provided by law." Under this provision the legislature might have declared that the election should be held only at the time when a general election is held, and that the ballot used should in all respects comply with the requirements with respect to questions concerning the state at large. Instead of doing this, however, it has provided for a special election to be held whenever, in the opinion of the county authorities, the necessity for an issuance of bonds arises. The provisions on this subject are found in Sections 4270 to 4274, inclusive, of the Political Code. Section 4271 declares that "whenever it is necessary to submit to a vote of the electors of the county the question of making a loan, the board [of commissioners] must first determine the amount necessary to be raised." The next section (4272) provides for the giving of notice, and then proceeds, "and the election held and conducted, and the returns made in all respects in the manner prescribed by law in regard to the submission of questions to the electors of a locality under the general election law." Section 4273 provides that there shall be

printed upon the ballot the words "For the Loan" and "Against the Loan," but nothing further; the legislature evidently proceeding upon the theory that Section 1354 contains no explicit provision on this subject, and that the notice given by the board of the purpose and amount of the loan, which must be published, under Sections 1318 and 1321 of the general election law, is sufficient notice to the electors of the question at issue. Construing all these provisions together, we think this intention is manifest. Section 4272 therefore has no reference to the printed form of the ballot, but merely requires that the provisions of the general election law touching the qualifications of the voters, the appointment of judges and clerks, the secrecy of the ballot, and the method of voting should be observed. This must necessarily be the import of these provisions, else we must add to them a further requirement that the board may not submit the question of a loan at any other time than at a general election, whereas the clear inference, otherwise, is that this may be done at any time. The fact that the board chose to hold the election on the same day upon which the general election fell makes no difference in the requirements to be observed. The clerk followed the direction contained in Section 4273, and that was sufficient.

Counsel say that it is often advisable for the board to submit propositions for loans for specific amounts for different purposes separately at the same election, so that the electors may, if they choose, reject one and approve another, whereas the construction we have given the provision of the statute renders this course impossible. We do not think that this result necessarily follows. There would seem to be no insuperable objection to submitting separate propositions for two or more loans at the same time, provided the ballot should be so arranged, with proper designation of the different purposes, that the electors could vote upon them separately. The question does not arise in this case, however, and we would not venture to anticipate it and decide it now. We are satisfied that our views of the provisions of the statute, upon the facts

presented in this case, are reasonable, and carry out their spirit and intention; it being admitted that the purpose for which the loan is intended is a single purpose.

2. It appears that the highest number of votes cast for any office voted upon at the election was 2,400, that 1,000 were cast in favor of the issuance of the bonds, and that 462 were cast against it. It thus clearly appears, counsel say, that the proposition did not receive a majority of the electors voting, within the meaning of Section 5, Article XIII, of the Constitution, *supra.*

It will be observed that the requirement is that the approval must be by a majority of the electors of the county voting, not at a general election, but at *an election to be provided by law.*

As we have seen, such an election has been provided by law to be held at any time it may be deemed necessary by the board of commissioners. It happens, also, that the manner of holding it is the same as that prescribed for general elections. Thus it may, with perfect propriety, be held at the same time at which a general election is held; but the fact that this is the case does not require a different standard of estimating the majority necessary from that which would govern if the election is held on a different day. The evident meaning of the constitution is that the approval must be the result of an expression of a majority of those voting. The expression "majority of the electors thereof voting at an election," etc., clearly means a majority of those who vote, and not a majority of all the electors of the county, or of those who vote upon any other issue, at the same or some other time. If the election on the issue of a loan had been upon another day, there would have been no question but that it would have had a majority of the electors of the county who voted. It was none the less a special election, within the meaning of the law, though in this particular instance it was held, for convenience, on the day fixed for a general election. It is the theory of our government that those electors control public affairs who take a sufficient interest therein to give expression to their views. Those who

refrain from such expression are deemed to yield acquiescence.

In a recent case the court of appeals of Kentucky, having under consideration a similar constitutional provision, said: "It is a fundamental principle in our system of government that its affairs are controlled by the consent of the governed, and, to that end, it is regarded as just and wise that a majority of those who are interested sufficiently to assemble at places provided by law for the purpose shall, by the expression of their opinion, direct the manner in which its affairs shall be conducted. When majorities are spoken of, it is meant a majority of those who feel an interest in the government, and who have opinions and wishes as to how it shall be conducted, and have the courage to express them. It has not been the policy of our government, in order to ascertain the wishes of the people, to count those who do not take sufficient interest in its affairs to vote upon questions submitted to them. It is a majority of those who are alive and active, and express their opinion, who direct the affairs of the government, not those who are silent and express no opinion in the manner provided by law, if they have any. Before reaching a conclusion that those who framed our fundamental law intended to change a well-settled policy by allowing the voter who is silent and expresses no opinion on a public question to be counted, the same as the one who takes an interest in and votes upon it, we should be satisfied that the language used clearly indicates such a purpose." (*Montgomery County Fiscal Court* v. *Trimble,* 47 S. W. 773, 42 L. R. A. 738.)

We are aware that the decided cases are somewhat in conflict; but, in the absence of an express direction requiring the application of a different rule, we think this fundamental principle should control in this case, as giving effect to the clear intention of the constitution. The following cases we cite as support of this view: *Smith* v. *Proctor,* 130 N. Y. 319, 29 N. E. 312, 14 L. R. A. 403; *Howland* v. *Board of Supervisors,* 109 Cal. 152, 41 Pac. 864; *Cass County* v. *Johnston,* 95 U. S. 360, 24 L. Ed. 416; *Carroll County* v. *Smith,*

111 U. S. 556, 4 Sup. Ct. 539, 28 L. Ed. 517; *Gillespie* v. *Palmer,* 20 Wis. 544.

The order of the district court was correct, and must be affirmed.

*Affirmed.*