MORSE, RESPONDENT, v. GRANITE COUNTY ET AL., APPEL-
LANTS.

(No. 3,016.)

(Submitted October 31, 1911.  Decided November 11, 1911.)

[119 Pac. 286.]

*Counties—Indebtedness—Bonds—Boards of Commissioners—
Powers—Erection of Building—Site—Furnishings—Findings
by Board—Election Notice—Contents—Surplusage—Ballots—
Special Meetings—Regularity—Elections—Vote Required—
Constitution—Statutes.*

Counties—Boards of Commissioners—Powers—Discretion.
  1.  Though a board of county commissioners, being a body of limited
  powers, must in every instance justify its official action by reference
  to the provisions of law defining and limiting its authority, it may,
  where the mode of the exercise of a power is not pointed out, use
  its own discretion in selecting the mode; and if the course pursued is
  reasonably well adapted to the accomplishment of the end proposed,
  the result of its action cannot be called in question.
Same—Courthouse Bonds—Erection of Building—Site—Furnishings—
Findings by Board.
  2.  Where a board of county commissioners had in conformity with
  the requirement of section 2934, Revised Codes, determined that· the
  sum of $50,000 was necessary to defray the cost of the erection of
  a courthouse—the general purpose of a proposed bond issue—it was
  not required, before submitting the question to the electors of the
  county, to also ascertain the cost of a suitable site for the building,
  nor that of the necessary furnishings—matters incidental to and neces-
  sarily included in the principal purpose.
Same—Election Notice—Contents—Surplusage—Ballots.
  3.  The only question which the board of county commissioners was
  required to submit to the electors upon the proposition of procuring
  funds to erect a courthouse was whether a loan in the amount found
  necessary should be effected for such purpose; the inclusion in the
  order of election of other questions, such as the fixing of the date
  of the bonds, the rate of interest, the terms of the option to redeem,
  *etc.,*—matters exclusively within the discretion of the board, subject
  to certain statutory requirements—was therefore surplusage, and any
  departure in the ballot in this latter respect from the form in which
  such matters were stated in the order was immaterial.
Same—Special Meetings—Call for—Contents.
  4.  Section 2886, Revised Codes, provides that at a special meeting of
  a board of county commissioners no business other than that specified
  in the call must be transacted.  The defendant board called such
  a meeting for the purpose, *inter alia,* of doing "all necessary things
  in connection with the advertising and sale of" proposed bonds.  The
  board at the meeting adopted a formal resolution directing the bonds
  to issue.  *Held,* that the debentures were not void because the call

did not specifically state that one of the purposes of the meeting
was the making of an order directing them to issue, such purpose
being included in the general one above quoted.

Same—Elections—Bonds—Vote Required—Constitution—Statutes.

5.  Section 5, Article XIII of the Constitution declares that counties
shall not incur any indebtedness in an amount exceeding $10,000,
without the approval of a majority of the electors *"voting at an elec-
tion,"* etc.  Section 2933, Revised Codes, provides that they shall not
do so *"without the approval of a majority of the electors of the
county"*; and under section 2937 such a loan may be made *"if a
majority of the votes cast"* is in favor of it.  *Held,* that the mean-
ing of the provisions of the Constitution and of section 2933 is the
same, and that therefore the approval of a majority of the electors
voting at an election to determine whether a ·proposed indebtedness
shall be incurred, was sufficient to legalize a bond issue.

*Appeal from District Court, Granite County; F. C. Webster,
a Judge of the Fourth Judicial District, presiding.*

ACTION by George A. Morse against the county of Granite
and others.  Decree for plaintiff, enjoining defendants from
proceeding in the sale of county bonds.  Defendants appeal.
Reversed and remanded.

*Mr. D. M. Durfee, Mr. W. E. Moore, Mr. Albert J. Galen,*
Attorney General, and *Mr. W. S. Towner,* Assistant Attorney
General, submitted a brief in behalf of Appellants.  *Messrs.
Durfee* and *Towner* argued the cause orally.

It is the contention of plaintiff that under the provisions of
section 2933, Revised Codes, there must be a majority of all of
the electors of the county in favor of a bonding proposition,
or the election is invalid.  This contention, we submit, is er-
roneous.  It will be seen by a comparison of the section with
section 5, Article VIII, of the Constitution, that the statute has
apparently added to the requirements of the Constitution.  If
this be so, the statute is unconstitutional and void in so far as
such requirements are in conflict with the provisions of the
Constitution.  Section 29 of Article III of the Constitution
provides: "The provisions of this Constitution are mandatory
and prohibitory, unless by express words they are declared to
be otherwise."  In construing this provision the supreme court
lays down the rule that it can have but one meaning, *i. e.,* to

prevent the enactment of any law which has for its purpose the extension or limitation of the powers which the Constitution confers. (*In re Weston,* 28 Mont. 207, 72 Pac. 512; *State ex rel. City of Butte* v. *Weston,* 29 Mont. 125. 74 Pac. 415.)

But granting that section 2933 is not obnoxious to the Constitution, the defendants insist that the construction contended for by the plaintiffs is not supported either by reason or authority. To argue that the voters or electors residing in a county who do not take the trouble to vote upon a question that is submitted to the people must be counted, although expressing no opinion one way or the other, is a position that cannot be supported by any good or valid reason whatever. The weight of authority is in favor of the proposition that where electors do not vote at all upon a pending proposition, they are presumed to assent to the proposition as expressed by a majority of those who do vote. (See 15 Cyc. 388; *County of Cass* v. *Johnston,* 95 U. S. 360, 24 L. Ed. 416; *St. Joseph Township* v. *Rodgers,* 16 Wall. 644, 21 L. Ed. 328; *Green* v. *State Board of Canvassers,* 5 Idaho, 130, 95 Am. St. Rep. 169 and note, 47 Pac. 259; *Fox* v. *City of Seattle,* 43 Wash. 74, 117 Am. St. Rep. 1037, 86 Pac. 379.)

The supreme court of Washington, in *Strain* v. *Young,* 25 Wash. 578, 66 Pac. 64, in construing a statute different in phraseology from the Constitution on the question of the requisite majority of votes necessary, used the following language: "The phraseology of the statute is somewhat different from that of the Constitution; but, as the statute was enacted in pursuance of the Constitution, it must be held to mean the same as the Constitution."

The Constitution of Montana on the question of the majority vote, above, is construed in *Tinkle* v. *Griffin,* 26 Mont. 426, 68 Pac. 859, in which this court used the following language: "The evident meaning of the Constitution is that the approval must be the result of an expression of a majority of those voting. The expression 'majority of the electors thereof voting at an election,' *etc.,* clearly means a majority of those who vote, and

not a majority of all the electors of the county, or of those who vote upon any other issue at the same or some other time." (See, also, *Fabro* v. *Town of Gallup,* 15 N. M. 108, 103 Pac. 271; *State* v. *Blaisdell,* 18 N. D. 31, 119 N. W. 360.)

It is apparent from a reading of sections 2934, 2935 and 2937, Revised Codes, that all that was necessary for the commissioners to insert in the proclamation calling the special election was the amount of the loan and the purpose for which such loan is to be made. These facts are clearly ascertainable from the proclamation. It is further apparent that the proclamation as issued contained some matters in addition to the statutory requirements. The question now presents itself whether such additional declarations would be binding upon the board, or whether they should be disregarded as surplusage. "In a notice of election for a particular purpose a substantial compliance with the statute is sufficient." (10 Am. & Eng. Ency of Law, 631; see, also, on the same subject, *State* v. *Carbon County,* 36 Utah, 394, 104 Pac. 222; *Seymour* v. *City of Tacoma,* 6 Wash. 427, 33 Pac. 1060; *Gilbert* v. *Canyon County,* 14 Idaho, 437, 94 Pac. 1032; *Evers* v. *Hudson,* 36 Mont. 135, 92 Pac. 462; *Williams* v. *Shoudy, Co. Treas.,* 12 Wash. 362, 41 Pac. 169; 15 Cyc. 323; *Tillson* v. *Ford,* 53 Cal. 701; *Troutman* v. *Hays* (Ky.), 101 S. W. 976; *Hunt* v. *Fawcett,* 8 Wash. 396, 36 Pac. 320.)

"The power to erect a courthouse includes the power to purchase permanent furnishings and fixtures for the purpose of placing the courthouse in fit condition to be used for the purpose for which it was intended." (*Territory ex rel. Overholser* v. *Baxter,* 16 Okl. 359, 83 Pac. 709.) This is a well-considered case and decided on a statute similar to our own, in that it provides expressly for the power to "erect or purchase"—the power to "furnish" being considered a necessarily implied power. Likewise it has been held, under a statute authorizing the issuance of bonds for building bridges, that the authority included the costs of necessary superintendence. (*Gilbert* v. *Canyon County, supra.*)

*Messrs. Clayberg & Horsky* submitted a brief in behalf of Respondent; *Mr. John B. Clayberg* argued the cause orally.

The sale of the bonds was properly enjoined for the following reasons: 1. The purpose of the issue included the purchase of real estate and the furnishing and equipping of a courthouse. The commissioners must furnish and equip the courthouse under their general powers and out of the general revenues of the county, under subdivision 9 of section 2894, Revised Codes, which gives power "to cause to be erected and furnished a courthouse, jail, hospital, and such other public buildings as may be necessary." They may issue bonds for the purpose of acquiring a building site for a courthouse, and the construction of such courthouse, under the statutes above referred to, but they must furnish and equip the same by the exercise of their powers out of the *general* funds of the county, and pay for such furnishing and equipment, *not out of the proceeds of bonds* issued under the statutes above referred to, but by warrants or orders upon the *general* funds of the county. Possibly bonds might be issued for such purposes under certain circumstances, but such issuance would be by virtue of statutes other than those here in question. The word "construct" is not broad enough to include the power of furnishing and equipping a courthouse. The case of *Territory* v. *Baxter*, 16 Okl. 359, 83 Pac. 709, cited by appellants, is not in point, is not good law and was decided simply under the force of circumstances.

The redeemability of the bonds sought to be issued is at variance with, and a departure from, the determination of the board made prior to the date of the election, and at variance with, and a departure from, the vote of the electors. Under the provisions of sections 2905, 2911 and 2912, Rev. Codes, it was mandatory upon the county commissioners to make the bonds, or a portion of them, redeemable prior to maturity. (See *Carlson* v. *City of Helena*, 39 Mont. 82, 102 Pac. 39, decided under provisions relative to bonds by the city.) In the exercise of this power, the board first determined that the bonds should be payable in twenty years, $5,000 thereof redeemable in ten years,

and $5,000 worth thereof redeemable each year thereafter, and fixed the interest at four and one-half per cent per annum. This exercise of the power conferred by the statutes exhausted such power, and the board thereafter could pass no resolution, nor make any order changing the redeemability of the bonds, without again submitting the same to a vote of the electors. (*Jenkins* v. *Williams,* 14 Cal. App. 89, 111 Pac. 116; *Elyria* v. *Elyria,* 57 Ohio St. 374, 49 N. E. 337; *City of Brenham* v. *Bank,* 144 U. S. 173, 12 Sup. Ct. 559, 36 L. Ed. 390.)

An insufficient number of the electors voted for the issue. The entire number of legally qualified voters in Granite county, at the time of the election, was 1,302. Of this number, 821 voted upon the question of issuing bonds—483 in favor and 378 against the bonds. Beyond question, the vote cast was a sufficient authorization to warrant the issuance of the bonds under section 5, Article XIII of the Constitution, but was it sufficient under section 2933, Revised Codes?

The provision of section 5, Article XIII, of the Constitution, that "no county shall incur any indebtedness or liability, for a single purpose, to an amount exceeding $10,000, without the approval of a majority of the electors thereof, voting at an election to be provided by law," is a limitation upon the power of the legislature, and would render void any statute which permitted any county to incur such indebtedness without the approval of such majority, and is prohibitive of any law containing less requirements than those established by this section of the Constitution. However, this constitutional provision is not prohibitive of the power of the legislature to make further requirements in the creation of indebtedness by a county, and this, in the instance under consideration, the legislature has done by the enactment of section 2933, Revised Codes, providing that "the board of county commissioners must not borrow money for any of the purposes mentioned in this title, or for any single purpose, to an amount exceding $10,000, without the approval of a majority of the electors of the county, and without first having submitted the question of a loan to the vote of such electors."

"Majority," as used in a Constitution, requiring a majority of the electors to ratify an amendment to the Constitution, means more than one-half of those qualified to vote at the time the election is held. (*In re Denny,* 156 Ind. 104, 59 N. E. 359, 51 L. R. A. 722.) In this case, the court uses the following language: "There is no room for construction. The language is too plain to admit of quibbling. 'Majority' means more than one-half. 'Electors,' with reference to an election, means, according to the lexicographers and universal accepted usage, 'persons possessed of the legal qualifications to entitle them to vote.' The word 'voters' on the other hand, has two meanings, —'persons who perform the act of voting,' and 'persons who have the qualifications entitling them to vote.' "

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

At the general election held in November, 1910, there was submitted to the electors of Granite county the question whether the board of commissioners of the county should issue its bonds to secure a loan of $50,000 to provide funds to build, furnish, and equip a county courthouse and to secure ground for site purposes, in addition to that already owned by the county, in case it should be found necessary. On a canvass of the returns it was found by the board of commissioners that, of the total of 1,302 qualified electors in the county, 483 had voted in favor of issuing the bonds, and 378 had voted adversely. The board thereupon declared that the loan had been approved by the requisite majority of the electors, and was proceeding to issue and sell the bonds under the authority thus assumed to have been given. The plaintiff, an elector and taxpayer of the county, thereupon brought this action to enjoin the board and its members from proceeding further in the premises. It is alleged in the amended and supplemental complaints that the proceedings of the board were nugatory and that the bonds were invalid: (1) Because the board failed first to determine that it was necessary to purchase additional ground for site purposes

or to ascertain what amount of the proposed loan would be required to effect the purchase; (2) because the reservation, in the bonds offered for sale, of the option to redeem, is a distinct departure from that determined by the board prior to the election and from that upon which the electors voted; and (3) because the resolution of the board, at a special meeting held after the election providing for the issuance of the bonds, was not adopted as required by the statute. It is also alleged that the issue of bonds was not authorized by a majority of the electors of the county as required by the statute. The following is a synopsis of the resolution and orders of the board under which the election was held: At a regular meeting held on September 12, 1910, it was determined by a majority vote of the board, upon consideration of a petition submitted by certain residents and taxpayers of the county, that the "present building used for a courthouse is insecure," and that it was to the "best interest of the people of the said county that a suitable and fireproof building be built." It was thereupon ordered that an election be proclaimed for November 8, 1910, and that the proclamation be spread upon the journal of proceedings of the board as its order determining the necessity for the loan and its amount, the purposes for which the bonds were to be used, and the statement of the proposition submitted to the electors. This order reads as follows:

"Whereas it is considered by a majority of the board of county commissioners of Granite county, Montana, that it is necessary in order to furnish and provide suitable, secure and safe storage room for the county records of the county, and for the convenience of the county officers of this county and for holding the district court of said county, that a new, modern, fireproof, secure and convenient courthouse for said county should be erected; and whereas, it may be necessary to secure additional ground for a site for said courthouse in addition to the ground already owned by the county; and whereas, there are not sufficient funds in the treasury of said county to pay the costs of securing such additional ground for the

construction of said courthouse or for the furnishing or equip-- ment of the same; and whereas, it is considered by the board that the sum of fifty- thousand dollars will be necessary for such purposes as aforesaid; and whereas, it will be necessary to issue and sell coupon bonds of the said county in the sum of fifty thousand dollars, in order to provide a fund for the building of such courthouse and the purchase of additional ground therefor, and the furnishing and equipment of the same; and that such bonds to be issued and sold in order to obtain the highest market price for the same should be when issued payable in twenty years from the date thereof, and to be re- deemable as follows, to wit: Five thousand dollars thereof to be redeemable in ten years thereof; five thousand dollars thereof to be redeemable and payable each and every year after ten years.

"It is therefore ordered by the board, that at the general election in the county of Granite, to be held on the 8th day of November, 1910, at the regular established polling places in the various precincts in the county, there shall be submitted to the qualified electors of said county who are duly registered according to law and entitled to vote at such election, the ques- tion and proposition as to whether coupon bonds of the said county amounting in the aggregate in the sum of fifty thousand dollars, bearing date the first day of March, 1911, and bearing interest at the rate of $4\frac{1}{2}$ per cent per annum, payable semi- annually from date, which shall be payable in twenty years from the date thereof, and five thousand [dollars] worth thereof shall be redeemable in ten years from the date thereof, and five thousand dollars worth thereof shall be redeemable in ten years, on the first day of March, in each and every year, after ten years.

"Such bonds to be issued and sold for the purpose of pro- viding a fund for said county for the purpose of the construction of a county courthouse at the county seat at Philipsburg, Mon- tana, and for the purchase of additional ground for the site

for said courthouse, and the equipment and furnishing the same.

"It is further ordered that [at] said election separate ballots be provided and the same duly numbered and perforated, as the regular ballots are, with the following proposition clearly stated thereon; that is to say, the form of the ballot to be used at said election for the purpose of voting upon such proposition shall be substantially as follows, to wit:

☐ "For authorizing and giving the authority to the county commissioners of Granite county, to issue and sell coupon interest-bearing bonds of said county in the sum of fifty ($50,000.00) thousand dollars, bearing interest at 4½ per cent. redeemable in ten years, payable in twenty years, for the purpose of the construction of a county courthouse for the said county and the purchase of additional ground therefor, and the furnishing and equipment thereof.

☐ "Against authorizing and giving the authority to the county commissioners of Granite county, to issue and sell coupon interest-bearing bonds of said county in the sum of fifty ($50,000.00) thousand dollars, bearing interest at 4½ per cent. per annum, redeemable in ten years, payable in twenty years, for the purpose of the construction of a county courthouse for the said county and the purchase of additional ground therefor, and the furnishing and equipment thereof."

The above order was thereafter duly published as the notice of election. The ballot used at the election was prepared in conformity with the order of the board, the clerk causing to be printed thereon the usual instructions as to how the elector should indicate his choice. On February 23, 1911, a special meeting was held by the board pursuant to notice given on February 17. The notice stated the purpose of the meeting as follows: "Said meeting is called for the purpose of adopting a form of bond, fixing the denomination of the same, and for the purpose of advertising the sale of courthouse bonds, and to do

all necessary things in connection with the advertising and sale of bonds for the erection of a courthouse." The journal of the proceedings, after reciting that authority had been conferred upon the board by the election and also the purpose of the meeting, contains the following: "Resolved, in accordance with the authority so given the board at said election: That the said board issue, and they do hereby issue said coupon bonds to the number of fifty, in denominations of one thousand each, in the amount of $50,000.00, bearing interest at 4½ per cent. per annum, payable semi-annually," etc. Upon the passage of this resolution, a form of bond was adopted and an order was made fixing April 4, 1911, at 10 o'clock A. M., as the date of sale and directing publication of notice thereof, to be made by the clerk as provided by the statute. This was done. The date of issuance was not specially stated in the order, but the dates for the payment of interest were fixed as January and July of each year. The adopted form bore the date July 1, 1911, and the due date was fixed as July 1, 1931, or, at the option of the county, as July 1, 1921, or "at any interest paying period after the 1st day of July, 1921." The district court held the bonds void and ordered the injunction to issue. The defendants have appealed. There is submitted the question whether the bonds are invalid for any one or more of the reasons alleged.

By way of preliminary, it may be remarked that the validity of the proposed bond issue is questioned solely on the ground that the board was guilty of an omission to observe the requirement of the law in substantial particulars. There is no allegation or suggestion of fraud or willful wrongdoing, by which the plaintiff or any other elector was misled so that he lost his vote.

While, in a strict sense, a county is not a municipal corporation, yet, in the sense that it is a body corporate with such powers only as are expressly conferred by the Code and special statutes, and such as are necessarily implied from those expressed (Rev. Codes, sec. 2870), it comes within the rules and

principles applicable to such corporations. Therefore, its board of commissioners—its executive body—is a body of limited [1] powers and must in every instance justify its action by reference to the provisions of law defining and limiting these powers. (Section 2894; *State ex rel. Lambert* v. *Coad,* 23 Mont. 131, 57 Pac. 1092.) If, however, there is no question of the existence of the power to do the act proposed, and the mode of its exercise is not pointed out, the board is left free to use its own discretion in selecting the mode it shall adopt or the course it shall pursue, and the result cannot be called in question if the course pursued is reasonably well adapted to the accomplishment of the end proposed.

"1. The board of county commissioners has jurisdiction and power: * * * (8) To purchase, receive by donation, or lease any real or personal property necessary for the use of the county, preserve, take care of, manage and control the same; but no purchase of real property must be made unless the value of the same has been previously estimated by three disinterested citizens of the county, appointed by the district judge for that purpose, and no more than the appraised value must be paid therefor."

" (9) To cause to be erected and furnished a courthouse, jail, hospital, and such other public buildings as may be necessary. * * *

" (27) To issue on the credit of the county, coupon bonds to an amount sufficient to secure the necessary funds for the procurement of necessary building sites, for the construction of necessary public buildings and for the construction of bridges and highways, in accordance with the provisions of Articles III and IV, Chapter II, Title II, Part IV, of the Political Code." (Rev. Codes, sec. 2894.) Article IV of the Political Code of 1895, referred to in the last subdivision of this section, comprises sections 2933 to 2938 of the Revised Codes.

Section 2905 also confers the power, among others, to issue bonds for the purchase of necessary building sites, and for the construction of necessary public buildings.

Section 2933 provides that the question whether a loan shall be effected shall be submitted to the electors of the county.

Section 2934 declares: ''Whenever it is necessary to submit to a vote of the electors of the county the question of making a loan, the board must first determine the amount necessary to be raised.''

There is nowhere in the Codes any provision requiring the power of the board to be put in motion by petition. It may, therefore, proceed upon its own initiative and determine whether it is necessary to effect a loan and what amount is required. [2] Having ascertained that it is necessary, it must determine the amount in order that the electors may know the extent of the burden they assume. This is a necessary prerequisite to the validity of all subsequent proceedings. (Section 2934.) Was the board required by this provision to make specific findings of the amount necessary for each of the three purposes included in the general purpose, *viz.*, the erection of a suitable courthouse building? The section does not say so in terms, and since the power to purchase real estate necessary for the use of the county, and to cause to be built and furnished necessary county buildings, including a courthouse, and to issue bonds for these purposes, is conferred by sections 2894 and 2905, we hold that the finding of the amount necessary for the general purpose was sufficient.

In *Hefferlin* v. *Chambers,* 16 Mont. 349, 40 Pac. 787, this court in construing section 5, Article XIII, of the Constitution, which prohibits a county from incurring indebtedness or liability for any single purpose in an amount exceeding $10,000, expressly held that the purchase of a site and the erection of a courthouse thereon is a single purpose within the meaning of the prohibition. And in the case of *Yegen* v. *Board of County Commissioners,* 34 Mont. 79, 85 Pac. 740, in which this court, in considering the validity of a statute creating a state board of health, and referring to certain provisions therein which authorized the board of county commissioners to erect a detention hospital, said: ''While these sections do not in express terms

empower the boards of commissioners to acquire sites for the erection of detention hospitals for their respective counties, they do confer the power to build them, and, by the well-settled rule that every power necessary to execute the power expressly granted is necessarily implied, the power to acquire by purchase or otherwise suitable sites for these hospitals is necessarily implied; for it would be idle to say that the boards have power to erect suitable buildings for the expressed purpose, and then say that they have no power to proceed because there is no express grant of power to purchase suitable sites for them.'' The same may with equal propriety be said of the necessary furnishing of the building. The site and the furnishing are both necessary parts of the general purpose to provide the county with a courthouse, because not only must the building be suitable in structure and arrangement to serve the public as a courthouse, but it must also be so furnished and equipped that it will be useful for that purpose. The preliminary finding of the board was sufficient.

But counsel for plaintiff say that subdivision 8 of section 2894, *supra,* prohibits the board from purchasing any real estate, unless its value has been previously estimated by three disinterested citizens, appointed as therein provided. This is true, but it does not follow that the price must be ascertained before the issue of bonds may be voted by the electors. The prohibition becomes operative only when the time has arrived when it becomes necessary to fix the terms of the purchase.

2. Nor do we think the bonds should be held invalid either because the ballot used by the electors did not permit them to vote upon the proposition exactly in the form in which it was stated in the proclamation, or because the option to redeem was not reserved in the terms stated therein. The only question [3] which it was necessary to submit to the electors was whether the board should effect the loan for the purpose stated and in the amount found necessary. This was done, and we do not think the result should be declared nugatory because the board consulted the electors as to the date the bonds should

beár, or when they should mature, or as to the rate of interest they should bear, or as to the terms of the option to redeem, or as to the dates at which the interest should be due and payable. It is mandatory upon the board to fix the date of maturity of such bonds at a period not longer than twenty years from the date of their issuance, and to reserve the option to redeem them, or some of them, prior to the date fixed for their maturity. So, also, must the interest, not exceeding six per cent, be made payable semi-annually on the first days of January and July of each year. (Rev. Codes, secs. 2905, 2911, 2912; *Carlson* v. *City of Helena*, 39 Mont. 82, 102 Pac. 39.) Subject to these requirements, however, the board may fix the date of the bonds, the rate of interest, and the terms of the option to redeem to meet its own judgment as to the ability of the county to discharge the indebtedness. With these matters the electors have nothing to do. The order of the board in such cases is jurisdictional. It must contemplate an indebtedness which falls within the power of the board to create for a designated purpose. When it meets this requirement, or, in other words, when it embodies all the statements which the statute requires it to contain, the consent given by the electors is not restricted or enlarged by reason of the fact that through inadvertence or mistake it contains matters the determination of which lies exclusively in the discretion of the board. The function of the order is not to notify the electors what the law is, but to inform them of the action which the board proposes to take, and of the time and place at which those entitled to give or refuse their consent may do so. (*State ex rel. Whitmore* v. *Carbon County*, 36 Utah, 394, 104 Pac. 222.) A notice in substantial compliance with the statute is sufficient. (10 Am. & Eng. Ency. of Law, 2d ed., 631.) It need not state matters implied, and, if it does, it will not be nugatory so long as it is not so misleading as to cause the electors to lose their votes. (15 Cyc. 323.) It is analogous to a pleading in an ordinary action or special proceeding. The familiar rule applied to the construction of a pleading, *viz.,* that, if it states a cause of action, surplus and redundant alle-

gations may be stricken out or disregarded, is applicable to such an order, and matters wholly irrelevant to the proposition to which the electors must give their consent may be treated as surplusage. That the electors have been asked to give their consent to things which the board may or must do without such consent, may not be held to restrict the discretion lodged in it by the statute. The instant case is to be distinguished from that of *Carlson* v. *City of Helena, supra,* and like cases. In that case the ordinance calling the election submitted to the electors the question whether the city should issue its bonds to procure a particular supply of water, instead of the question generally, whether it should issue bonds to procure a supply, thus devesting itself of the discretion, lodged in it by law, to procure any supply which it might find available. The proposition submitted to the electors of the city departed substantially from that which the council had authority to submit. The election was held void for that reason, and not because the council asked the approval of the electors of things which might be done without it.

While the form of bond adopted incorporated the proposition as printed upon the ballot, it was not incumbent upon the board to have it so. The amount and purpose of the loan, as stated in the ballot, was all that was required to be stated.

3. The statute authorizing special meetings of boards of county [4] commissioners requires them to be called by order signed by a majority of the members of the board and five days' notice to be given by the clerk to each member not joining in the order. It provides: ''The order must specify the business to be transacted and none other than that specified must be transacted at such meeting.'' (Rev. Codes, sec. 2886.) The purpose of this requirement is to give every member of the board the opportunity to be present and take part in the business to be transacted. If any member does not choose to be present, he may under this provision exercise his option to remain away in case he thinks his interest in the pending business is not such as to demand his personal attention. If he does not care to

attend, he has the assurance that the board will not take up any other business than that specified. It is true that the order in question contains no reference to an intention on the part of the board to adopt a formal resolution directing the bonds to issue; but it does state that the board intended to do all necessary things in connection with the advertising and sale of the bonds for the construction of a courthouse. This cannot be .construed to mean anything other than that the board intended to do everything in connection with the preparation of the bonds which was necessary to effect a sale of them. This included, of course, a formal order directing them to issue, if such an order were necessary. Besides, the order calling the meeting was signed by all the members of the board, and all were present and took part in the business transacted. There is, we think, no merit in the contention made by counsel for plaintiff that the bonds are void because the call for the meeting did not specially state that the formal order directing the bonds to issue would be made.

4. Was a majority of the vote cast in favor of the issuance [5] of the bonds within the meaning of the provision of law applicable? Section 5 of Article XIII of the Constitution declares: "No county shall incur any indebtedness or liability for a single purpose to an amount exceeding ten thousand dollars ($10,000) without the approval of a majority of the electors thereof, voting at an election to be provided by law." ·

Section 2933, *supra*, of the Revised Codes, and section 2937, read as follows:

"Sec. 2933. The board of county commissioners must not borrow money for any of the purposes mentioned in this title, or for any single purpose to an amount exceeding ten thousand dollars without the approval of a majority of the electors of the county, and without first having submitted the question of a loan to a vote of such electors."

"Sec. 2937. · If a majority of the votes cast are in favor of the loan, then the board may make the loan, issuing bonds, or otherwise, as may seem best for the interests of the county."

In the case of *Tinkel* v. *Griffin,* 26 Mont. 426, 68 Pac. 859, this court, construing the provision of the Constitution, *supra,* said: ''The evident meaning of the Constitution is that the approval must be the result of an expression of a majority of those voting. The expression 'majority of the electors thereof voting at an election,' *etc.,* clearly means a majority of those who vote, and not a majority of all the electors of the county, or of those who vote upon any other issue at the same or some other time.'' This conclusion was reached because the language employed indicated that the convention had adopted the theory that the control of public affairs must be regarded as belonging to those electors who take a sufficient interest in them to give expression to their views at the ballot-box.

But counsel for plaintiff insist that since the Constitution is only a limitation upon the power of the legislature, and the provision thereof quoted above goes no further than to declare that indebtedness beyond the amount mentioned shall not be contracted without the approval of a majority of the electors ''voting at an election to be provided by law,'' it does not operate as a limitation upon the power of the legislature, but is only a requirement without the observance of which the proposed debt cannot be contracted, and hence that the legislature is free to declare that a county cannot issue bonds for any purpose unless they are authorized by a larger vote than that required by the Constitution. We shall not stop to examine this contention. Assuming that it is based upon sound principle, in the absence of an intention clearly expressed by the legislature to the contrary, we are not at liberty to conclude that it in the enactment of section 2933, *supra,* purposed to add any requirement to that prescribed by the Constitution. Though the language of the section deviates from that employed in the Constitution, it was evidently enacted in pursuance thereof and must be held to mean the same. That this is true is clear from the position occupied by the section in the Article in which it is found and the subject with which it deals, as well as from the provision found in section 2937, which follows substantially

the language used in the Constitution. Section 2933 is the first section in the Article, and in pursuance of the constitutional requirement, declares the limit beyond which the county may not go without the consent of the electors. The words "majority of the electors of the county" were evidently loosely used, without any purpose of declaring definitely what majority of the electors was deemed necessary. On the other hand, when the legislature came to declare a definite purpose on this subject, in section 2937, by use of the words "a majority of the votes cast," it indicated its purpose not to add anything to the requirement prescribed by the Constitution, but to pursue it strictly. These sections were enacted at the same time, with three other sections, each dealing with a different particular of the mode prescribed for the negotiation of loans by counties. They must be construed, therefore, so as to render them harmonious with each other. The construction we have given them renders them so. In any event, under the rule of construction provided by the Codes (section 3558), since section 2937 stands later in numerical order in the title, and is not inconsistent in its provisions with the general meaning and purpose of it as a whole, it must prevail.

We are of the opinion that the proceedings of the board, though irregular, were in substantial compliance with the law; that the election was properly conducted; and that authority to issue the bonds was granted by a majority of the electors, as required by the Constitution and the statutes made in pursuance thereof.

The order granting the injunction is, accordingly, reversed, and the cause is remanded.

*Reversed and remanded.*

MR. JUSTICE SMITH and MR. JUSTICE HOLLOWAY concur.