REID, APPELLANT, *v.* LINCOLN COUNTY ET AL., RESPONDENTS.

(No. 3,198.)

(Submitted June 20, 1912.   Decided June 24, 1912.)

[125 Pac. 429.]

*Counties—Indebtedness—Bonds—Highways, Bridges and Fer-ries—Single Purpose—Special Elections—Ballot—Contents—Advertisement—Boards of Commissioners—Meetings—Notice.*

Counties—Board of County Commissioners—Meeting.
　　1.　Where all of the members were present and acted as the board of county commissioners pursuant to a previous resolution, the question of notice of the meeting was immaterial in so far as it affected the acts done at that meeting.

Same—Bonds—Order—Notice—"Ferry."
　　2.　*Held,* that the order and notice for a special election held for the issuance of bonds to create a highway system, with bridges, which in-cluded public ferries, was not invalid because merely generally stating those purposes, and not mentioning ferries, a "ferry" being a mere incident or movable portion of a highway where it crosses a stream.

Same—Bonds—Order—Notice.
　　3.　An order for an election to determine the issuance of a county bond issue to create a highway system is not insufficient because merely stating the gross amount of money necessary to accomplish the general purpose.

Same—Bond Issue—Election—Validity.
　　4.　Where, under the statute, qualified voters were prevented from voting at a special county election to determine whether bonds should be issued, the exclusion of those voters does not render the election invalid, where the number so excluded could not have changed the result.

Same—Bonds—Elections—Ballot.
　　5.　The ballot, in a special election to authorize the issuance of county bonds for a public highway system in a county, which recited that the issue was the selling of county bonds in the amount of $125,000 to provide funds for a system of public highways, bridges, and free fer-ries, said bonds to be payable in twenty years and redeemable in

fifteen, was sufficient under Revised Codes, section 2938, providing that the ballot in such election shall state the bond proposition and the terms thereof explicitly and at length, it being only necessary in such cases to substantially follow the form of the statute.

Same—Bonds—Validity.

6. County bonds issued to provide funds for a highway system, which included a free ferry, were not invalid because the form of the bonds omitted reference to ferries, ferries being a mere portion of the highway.

Same—Bonds—Advertisement.

7. *Held,* that the form of the bond intended to be sold need not be adopted prior to the advertisement.

Same—Bonds—Special Election—Submission of Question.

8. An issue of bonds ratified by special election is not invalid because the proposition submitted to the voters included the construction of highways, ferries, and bridges; all these purposes were part of a general scheme of improvement of the highway system of the county.

Same—Establishment.

9. A public ferry being merely a part of the highway, a county may establish such ferries in the absence of special statutory authority.

Same—Highways—Power of Inhabitants.

10. In the absence of constitutional restrictions or prohibitory legislation, the people of a county can establish and construct as many highways, bridges and ferries as they deem necessary and by whatever method of procedure they may elect.

Appeal and Error—Moot Case.

11. An issue of county bonds for the establishment of a highway system including the building of a bridge over navigable waters will not be declared invalid because, at the time of the election, permission from Congress to erect the bridge had not been obtained; the permission having been obtained pending the appeal.

*Appeal from District Court, Lincoln County; J. E. Erickson, Judge.*

ACTION by Robert Reid against Lincoln County, the Board of County Commissioners of Lincoln County, and Paul D. Pratt and others, Commissioners. From a judgment for defendants, plaintiff appeals. Affirmed.

*Messrs. Noffsinger & Walchli,* for Appellant, submitted a brief and argued the cause orally.

The order and notice of election did not sufficiently describe the purpose of said bond issue, or the highways to be constructed, are too general and indefinite and delegate to the board the discretion as to the purposes for which said money may be expended in allowing them to construct from said funds such ferries and branch roads as they may desire and said order and notice

are therefore void. The courts hold that where the notice of election must state the amount of the bonds to be voted, it is illegal to state in the notice that a certain amount of the bonds or so much thereof as may be necessary shall be voted, as it delegates to the board the power to determine the amount, whereas this power is vested in the elector. (*Stern* v. *Fargo,* 18 N. D. 289, 26 L. R. A., n. s., 665, 122 N. W. 403.) The same reasoning applies as to the purpose of the proposed bond issue. Under the order and notice of election it is left to the discretion of the board to use the money to be realized from the bonds for the construction of as many roads and at such places and with such termini, and to establish and operate as many ferries and at such places, as it may determine. Under this general statement the purpose of the bond issue as contemplated by the elector may be totally defeated by the board spending the money and the whole thereof under this general clause, and a notice of election with this general statement and with such delegation of power to the board is illegal. (*McMahon* v. *Supervisors,* 46 Cal. 214; *People* v. *Baker,* 83 Cal. 149, 23 Pac. 364, 1112; *Stern* v. *Fargo,* 18 N. D. 289, 26 L. R. A., n. s., 665, 122 N. W. 403.) The notice of election being too general, the election is invalid. (11 Cyc. 558, and cases cited *supra.*)

The form of bond is defective and misleading in failing to recite that said bonds are also issued for the purpose of constructing ferries, and in reciting that all the provisions of the statute relative to the issuance of said bonds have been complied with, and that said bonds are issued pursuant to an election held therefor. The rule of construction in such cases as this is, of course, more liberal for the county and the taxpayers where the bonds have not as yet been issued than where the bonds have passed into the hands of an innocent purchaser. (*Town of Coloma* v. *Eaves,* 92 U. S. 484, 23 L. Ed. 579.) In the case at bar no harm or detriment can come to the county at this time from an order of the court requiring the bonds to correctly state their purpose, while much harm may result from a ruling allowing the bonds to issue which did not truthfully state their purpose. The law is uniform that bonds are commercial paper, and hence have all

the incidents of commercial paper, and while it is true that in the absence of a recital as to the authority of the county to issue such bonds a *bona fide* holder is charged with notice of the statute and proceedings, this rule does not apply to cases where the bond recites the purpose and the authority. In other words, the bond containing the recital as to authority, a *bona fide* purchaser has the right to rely upon the recital and is relieved from the obligation of looking up the proceedings, as it is often difficult for purchasers to have access to the proceedings, the bonds being sold at places far removed from the place of issue. (*Presidio Co.* v. *Bond Co.,* 212 U. S. 58, 53 L. Ed. 402, 29 Sup. Ct. Rep. 237; *Ottawa* v. *Bank,* 105 U. S. 342, 26 L. Ed. 1127; *Barnett* v. *Dennison,* 145 U. S. 135, 36 L. Ed. 652, 12 Sup. Ct. Rep. 819; *Chaffee Co.* v. *Potter,* 142 U. S. 355, 35 L. Ed. 1040, 12 Sup. Ct. Rep. 216; *Gunnison Co.* v. *Rollins,* 173 U. S. 255, 43 L. Ed. 689, 19 Sup. Ct. Rep. 390; *Buchanan* v. *City of Litchfield,* 102 U. S. 278, 26 L. Ed. 138; *Town of Coloma* v. *Eaves, supra.*)

The various purposes for which said bonds are issued and the various propositions submitted to the electors at said election for the issuance of said bonds do not constitute a single purpose within the meaning of the constitution and the laws of this state. The authorities are general and quite uniform that in bond elections each separate proposition must be separately voted upon. (*People* v. *Baker,* 83 Cal. 149, 23 Pac. 364, 1112; *Denver* v. *Hays,* 28 Colo. 110, 63 Pac. 311; *Stern* v. *Fargo,* 18 N. D. 289, 26 L. R. A., n. s., 665, 122 N. W. 403; *Blaine* v. *Seattle,* 62 Wash. 445, 114 Pac. 164; 11 Cyc. 557.) This is to prevent "log-rolling," and to give the elector an opportunity to express his free and unhampered assent.

The county has no authority to bond for free ferries, and free ferries being made a part of said proceedings, the entire proposed bond issue is invalid. That a ferry is neither a bridge nor a highway within the provisions of an Act making a county liable for injuries occurring upon highways, causeways and bridges, see *Chick* v. *Newberry County,* 27 S. C. 419, 3 S. E. 788. So in this case the legislature having specifically mentioned highways and bridges for which bonds may be issued, this term cannot include

ferries. The power to bond for ferries cannot be claimed as a power necessary and incident to the express power to bond for highways and bridges. In this respect the case at bar is distinguishable from the case of *Morse* v. *Granite County*. In that case our supreme court held that the commissioners had an implied power to bond for the purchase of equipment for a courthouse, being necessary to its express power to bond for the construction of a courthouse. Equipment and furnishings are essential to all courthouses and hence a necessary part thereof, but ferries are not essential to all highways, for there are many highways where no ferries are needed, and the legislature having pointed out a means by which ferries can be constructed (Laws 1909, p. 38), that manner of attaining this end must be followed by the board where no other is clearly provided. (*Anderson* v. *West Chicago St. Ry.*, 200 Ill. 329, 65 N. E. 717; *Union Drainage Dist.* v. *Commissioners*, 87 Ill. App. 93; *Wrought Iron Bridge Co.* v. *Board*, 19 Ind. App. 672, 48 N. E. 1050.)

The county has no power to bond for unestablished roads, or bridges on unestablished roads, the complaint alleging that practically none of the proposed highways to be constructed from said funds have been established. Under section 2894, the board of county commissioners have a general control to establish and maintain highways. However, the manner in which this power is to be exercised by the board is limited and specifically pointed out by the general road act of 1903, being section 1390 *et seq.* of the Code, and the board has no jurisdiction to lay out any highways except by following the procedure pointed out by the Code. (*Mills* v. *Board of Commrs.*, 50 Kan. 635, 32 Pac. 361; *Hentzler* v. *Bradbury*, 5 Kan. App. 1, 47 Pac. 330; 37 Cyc. 53.)

The county has no power to bond for the construction of bridges across a navigable stream without first obtaining permission for the construction of such bridges from the federal government and the state of Montana, especially where no road leads to or from the proposed site of the proposed bridge. The power to lay out highways does not include the power to lay out such highways or build bridges across navigable waters. (*Hope Town-*

*.ship* v. *Ludwick,* 151 Mich. 498, 15 L. R. A., n. s., 1170, 115 N. W. 419.)

Mr. *Albert J. Galen,* Attorney General, and *Messrs. James W. Scott, Logan & Child,' Booth & Maiden,* and *Gray & Rowland,* for Respondents, submitted a brief; *Messrs. Logan* and *Booth* argued the cause orally.

The appellant contends that the order and notice of election did not sufficiently describe the purpose of the bond issue and is too general and definite, and delegates to the board too much discretion as to the purposes for which the money is to be expended. A notice of election, as a general proposition of law, to authorize a bond issue, while it must conform to the statutory requirements, is sufficient if it shows substantially the purpose had in view. The function and purposes of a notice of election are to apprise the voters of the nature of the proposition to be submitted and when and where it is to be acted upon. The notice need not recite the law which governs the issuance of the bonds. The notice is sufficient where the voters are not misled, and matters which are purely within the discretion of the board need not be stated. (*Morse* v. *Granite County,* 44 Mont. 78.)

The supreme court of this state, in passing upon the question of the singleness of purpose and of the necessity for the board of county commissioners to determine the amount to be raised, has held that the preliminary finding of the board as to the amount required and the purpose for which it was to be used is sufficient without segregating the amount for each particular item, all of which are included in the "single purpose." (*Hefferlin* v. *Chambers,* 16 Mont. 349, 40 Pac. 787; *Yegen* v. *Board of County Commrs.,* 34 Mont. 79, 85 Pac. 740.)

Appellant contends that the form of the bond is misleading, in that it fails to recite that said bonds were also issued for the purpose of constructing free ferries. It is further contended by appellant that the omission of the words "free ferries" from the form of the bond is a fatal variance.

The validity of negotiable bonds depends upon the authority of the board to issue the bonds and the manner of carrying into

execution the authority granted by legislative and constitutional authority. Our statute provides no formal wording of the bond, authority. Our statute provides no formal wording of the bond, of county commissioners. The validity of the bond does not depend upon the mere mechanical process involved in the making, but upon the authority conferred by legislative enactment and as exercised by this authority by the board of county commissioners. If the form of the bond comply with the requirements of the general rule of law and fixes the form of this character of instruments, the bonds are sufficient, and where the statute does not provide the form of bond or require any prescribed form, if the form follows the general rules in relation to bonds, mere informalities do not affect their legality.

The objection of the appellant, that the various purposes for which the bonds were issued and the various propositions submitted do not constitute a single purpose within the meaning of the constitution and laws of the state raises, perhaps, one of the most important questions submitted to the court. There is no contention but what the authorities are quite uniform that each separate proposition must be separately voted upon, but the respondent contends that the construction of a system of highways, composed of roads, bridges and ferries is a "single purpose," and that one road, or one bridge, or one ferry alone, all of which together make up the system of highways, do not constitute separate propositions which require the submission of each item in the entire system to be voted upon separately. (*Manley* v. *Board of Commrs.*, 104 Pac. 1045; *Board of Commrs.* v. *Harrell*, 147 Ind. 500, 46 N. E. 124; *Boothroyd* v. *Commrs. of Larimer County*, 43 Colo. 428, 97 Pac. 255; *Potter* v. *Lainhart*, 44 Fla. 647, 33 South. 251; *Gilbert* v. *Canyon County*, 14 Idaho, 429, 94 Pac. 1027; *State ex rel. Horsely* v. *Carbon County* (Utah), 114 Pac. 522; *City of Louisville* v. *Board of Park Commrs.*, 24 Ky. Law Rep. 38, 65 S. W. 860; *Linn* v. *City of Omaha*, 76 Neb. 552, 107 N. W. 983; *Blaine* v. *Hamilton*, 64 Wash. 353, 116 Pac. 1076; *People* v. *Counts*, 89 Cal. 15, 26 Pac. 612.)

Appellant contends that the county has no authority to bond for free ferries, and that free ferries being included within the

order of the board, invalidates the entire bond issue. This contention raises the question of what constitutes a highway, and whether or not the word "highway" includes the words "roads, bridges and ferries." The word "highway" includes bridges, which are but ordinary roads carried across streams, and ferries which are nothing but the continuation of a road and do not in any respect differ from a bridge. As to the question that a public bridge is properly a part of a system of public highways, there can be no doubt. (See 11 Am. & Eng. Ency. of Law, 541; Elliott on Roads and Highways, 21; Morrill on City Negligence, 69; *Burritt* v. *City of New Haven*, 42 Conn. 174; *Jones* v. *Keith*, 37 Tex. 394, 14 Am. Rep. 382; *Sachs* v. *City of Sioux City*, 109 Iowa, 224, 80 N. W. 336.)

Does a ferry bear the same relation to a road and public highway as a bridge? "A ferry, in a general sense, is a highway over narrow waters, and is a continuation of the highway from one side of the water over which it passes to the other." (*City of New York* v. *Starin*, 106 N. Y. 1, 12 N. E. 631.) As a link in the chain of transportation by dry land, a ferry forms a part of the public highway—a connecting link between places to which the public has rights. (*Hackett* v. *Wilson*, 12 Or. 25, 6 Pac. 652.)

MR. JUSTICE SMITH delivered the opinion of the court.

The only question involved in this appeal is whether plaintiff's amended complaint states facts sufficient to constitute a cause of action. The district court sustained a general demurrer thereto and entered judgment in favor of the defendants. Plaintiff appeals from the judgment.

The action was begun by the plaintiff, a citizen and resident of Lincoln county, to restrain the individual defendants, who comprise the board of county commissioners of said county, from selling and issuing the negotiable bonds of the county to the amount of $125,000 for the purpose of raising funds with which to construct roads, bridges and ferries in the county. The proceedings had by the defendants looking to the bond issue are set forth at length in the amended complaint, as follows:

"The following resolution was adopted by unanimous vote: 'Whereas, the county commissioners of Lincoln county, Montana, do deem and consider that it is essential to the future growth and prosperity of the county that an adequate system of highways, bridges and ferries be constructed through the county, all connected and making accessible each city and town of the county with one another and with every part of the county, to the end that the said county may develop its immense natural resources now largely latent by reason of the lack of roads and bridges and ferries throughout the county; that the present road and bridge and ferry facilities are quite inadequate; that a system of roads and bridges and ferries connecting the various parts of the county are so naturally and necessarily related that they are in fact a single project, consisting of interdependent parts; that the acquisition of rights of way for such roads, sites for necessary bridges and approaches thereto and landings for ferries are essential to such proposed improvements as an entirety; that it is necessary and essential, and to the best interests of Lincoln county and all of the people and property-holders thereof that Lincoln county incur indebtedness of one hundred and twenty-five thousand dollars for the purposes of raising funds in such amount with which to construct the proposed roads, bridges and ferries; and that the best way to raise such funds is to issue bonds against the general credit of the county of Lincoln, as provided by law: Now, therefore, be it resolved, and it is hereby resolved by the board of county commissioners of Lincoln county, Montana: That a system of roads, bridges and free ferries, comprising one general highway with branch roads, be laid out and constructed in manner as follows: Beginning at a point on the Lincoln county line southerly of Stryker; thence to continue northwesterly through Trego and Fortine to the town of Eureka, following the route of the existing public road; thence westerly to the village of Rexford, following said route; thence southerly and westerly on the east and south side of the Kootenai river to the city of Libby; thence westerly on the south side of the Kootenai river to the village of Troy. That a steel or iron bridge be constructed across the Kootenai river at the town of

Troy. That a steel or iron bridge be constructed across the Kootenai river at the city of Libby. That a steel or iron bridge be constructed across the Kootenai river at the village of Rexford. That each of said bridges be connected with and be a part of said system of highways, bridges and free ferries. That there shall be constructed such other branch roads leading to and connecting with said system of highways, bridges and free ferries as the board of commissioners determine. That such free ferries as the board of county commissioners may deem necessary and as a part of said system of highways, bridges and free ferries shall be constructed for the purpose of and as a means of transportation across the Kootenai river. That from the proceeds of said bonds there shall be appropriated by the board of county commissioners for the construction and repair of said system of highways, bridges and free ferries the following amounts: The sum of forty-five thousand dollars for the construction, repair and improvement of said system of highways and bridges and free ferries located and situated within the boundaries of the road districts of Lincoln county numbered one, two, three, four, thirteen, fourteen and fifteen respectively. The sum of forty thousand dollars for the construction, repair and improvement of said system of highways, bridges and free ferries located and situated within the boundaries of the road districts of Lincoln county numbered five, six, seven, eight, nine, sixteen, seventeen, eighteen and nineteen, respectively. The sum of forty thousand dollars for the construction, repair and improvement of said system of highways, bridges and free ferries located and situated within the boundaries of the road districts of Lincoln county numbered ten, eleven, twelve, twenty and twenty-one, respectively. That all roads now laid out and built or partly built along the proposed routes, or any of them, shall as far as practicable, be repaired and utilized in definitely established roads and highways. That none of the money obtained by this proposed bond issue be expended upon any roads or highways used as a part of or connecting the said system of highways and bridges and free ferries situated within the corporated limits of any incorporated city or town, save and except necessary approaches to

any bridge or free ferry. That the necessary sites for all proposed bridges across the Kootenai river and the necessary approaches thereto and the construction of the said bridges, iron or steel, shall be procured and done in conformity of law. That a special election of the qualified electors of said Lincoln county, Montana, be called and the same is hereby ordered called to be held on Saturday, the 28th day of October, 1911, in form and manner as provided by law, at which the proposition of so bonding the said county, in the sum of one hundred and twenty-five thousand dollars be submitted to such electors for their approval or rejection. That a copy of this resolution be spread upon the records of the board of county commissioners.'

"The following proclamation was adopted: 'Be it resolved, that a proclamation for a special election for bonds for a system of highways and bridges and free ferries be issued and published by the county clerk in the manner prescribed by law; that the proclamation be published in the "Eureka Journal," the "Western News" and the "Libby Herald"; and that the clerk attach the seal of Lincoln county to said proclamation, which proclamation is as follows: Election Proclamation. By the Board of County Commissioners of Lincoln County, Montana. By virtue and in pursuance of the authority vested in the board of county commissioners of Lincoln county, Montana, we, Paul D. Pratt, F. P. Garey and I. P. Bartlett, the duly elected, qualified and acting commissioners of the county of Lincoln, state of Montana, and as such constituting the board of county commissioners of said Lincoln county, do hereby proclaim that on Saturday, the 28th day of October, 1911, there will be held in the several election precincts of Lincoln county, state of Montana, a special election by the qualified electors of the county of Lincoln, to submit to said qualified electors for their approval or rejection the proposition to raise money for public improvements desired to be made in the said county of Lincoln, as follows, to-wit: The issuance of coupon bonds in the amount of one hundred and twenty-five thousand dollars, such bonds to be redeemable in fifteen years and payable in twenty years, and to bear interest at the rate of five per cent per annum, interest payable

semi-annually at the time prescribed by law, for the repair and construction and improvement of a system of highways and bridges and free ferries in accordance with law within the county of Lincoln, as follows, to-wit: Beginning at a point on the Lincoln county line southerly of Stryker; thence to continue northwesterly through Trego and Fortine to the town of Eureka, following the route of the existing public road; thence westerly to the village of Rexford, following said route; thence southerly and westerly on the east and south side of the Kootenai river to the city of Libby; thence westerly on the south side of the Kootenai river to the village of Troy. That a steel or iron bridge be constructed across the Kootenai river at the town of Troy. That a steel or iron bridge be constructed across the Kootenai river at the city of Libby. That a steel or iron bridge be constructed across the Kootenai river at the village of Rexford. That each of said bridges be connected with and be a part of [said] system of highways, bridges and free ferries. That there shall be constructed such other branch roads leading to and connecting with said system of highways, bridges and free ferries as the board of county commissioners determine. That such free ferries as the board of county commissioners may deem necessary and as a part of said system of highways, bridges and free ferries shall be constructed for the purpose of and as a means of transportation across the Kootenai river. That from the proceeds from the sale of said bonds there shall be appropriated by the board of county commissioners for the construction and repair and improvement of said system of highways, bridges and free ferries the following amounts: The sum of forty-five thousand dollars for the construction, repair and improvement of said system of highways and bridges and free ferries located and situated within the boundaries of the road districts of Lincoln county numbered one, two, three, four, thirteen, fourteen and fifteen, respectively. The sum of forty thousand dollars for the construction, repair and improvement of said system of highways, bridges and free ferries located and situated within the boundaries of road districts of Lincoln county numbered five, six, seven, eight, nine, sixteen, seventeen, eighteen and nineteen,

respectively.  The sum of forty thousand dollars for the construction, repair and improvement of said system of highways, bridges and free ferries located and situated within the boundaries of the road districts of Lincoln county numbered ten, eleven, twelve, twenty and twenty-one, respectively.  And in order that said election may be conducted in a quiet and orderly manner, we do hereby offer a reward of one hundred dollars ($100) for the arrest and conviction of any person, violating any of the provisions of title 4, part 1, of the Revised Codes of Montana of 1907.  In witness whereof we have hereunto set our hands and caused the seal of the county of Lincoln, state of Montana, to be affixed at Libby, the county seat, this 18th day of September, A. D. 1911.  Done in open meeting by the county commissioners. Paul D. Pratt.  J. P. Bartlett.  E. P. Garey.  Samuel Carpenter, Attest by the county clerk.'

''The following resolution was adopted: 'Be it resolved that the county clerk be authorized and directed to do and perform any and all acts required by law and necessary for the calling and conducting of the special election to be held on October 28, 1911, for the purpose of submitting to the qualified electors the question of authorizing the issuance of bonds in the sum of one hundred and twenty-five thousand dollars for a system of highways, bridges and free ferries in Lincoln county.' ''

The complaint then further alleges:

''(6) That thereafter and pursuant to the action taken by said board as aforesaid, the said board by its said clerk did publish in the said 'Eureka Journal,' 'Western News,' and 'Libby Herald' prior to October 28, 1911, and for the length of time required by law, said identical proclamation for said special election and in the form and in words as hereinabove in the fourth paragraph set out at length, and that no other notice of said election was given.

''(7) That thereafter on the 28th day of October, 1911, said election was held, pursuant to said proclamation, and out of a total of 660 votes cast, 433 were in favor of said proposed bond issue and 227 against said proposed bond issue, but that at said election only electors whose names appeared upon the old regis-

tration lists prepared and used for the general election of 1910 were permitted to vote, and that electors whose names did not so appear upon said 1910 registration lists, but whose names thirty days prior to said election were duly registered with, and did at the time of said election appear upon the registration books of the clerk of Lincoln county under the provisions of Chapter 113, Laws of 1911, were not permitted to vote; and that said election was the only election ever had upon the proposed bond issue referred to in this complaint, and that there were many electors whose names did not appear upon said list and who had no opportunity to register and vote at said election.

"(8) That for said election the defendant county prepared and furnished an official ballot, and the electors of said county used said official ballot for voting upon said proposition and that said proposition was stated upon said ballot so used by said electors at said election in words as follows and not otherwise, *viz.:*

☐  For the issuance against the general credit of Lincoln county of coupon bonds in the amount of one hundred and twenty-five thousand dollars, the purpose of said issue being to provide funds for a system of public highways, bridges and free ferries in said county, said bonds being payable in twenty years and redeemable in fifteen years, and bearing interest at the rate of five per cent per annum payable semi-annually.

☐  Against the issuance against the general credit of Lincoln county of coupon bonds in the amount of one hundred and twenty-five thousand dollars, the purpose of said issue being to provide funds for a system of public highways, bridges and free ferries in said county, said bonds being payable in twenty years and redeemable in fifteen years, and bearing interest at the rate of five per cent per annum payable semi-annually.

"(9) That thereafter on November 6, 1911, said board of county commissioners, all members thereof being present, met in special session and made an order directing that said bonds issue, in the sum of one hundred twenty-five thousand dollars ($125,-000), redeemable in fifteen years and payable in twenty years, bearing interest at the rate of five per cent per annum, to secure funds for the repair, construction and improvement of a system of highways, bridges and free ferries, and passed a further order that said bonds be advertised for sale for thirty days in said

'Eureka Journal,' a local newspaper, and in the 'American Banker' of New York City, New York; and at said meeting adopted a form of advertisement for the sale of said bonds, which said proceedings as so had by said board more fully appear from the minutes of said board, and the board acted therein as shown by said minutes, and of which said minutes the following is a full, true and correct copy:

" 'Commissioners' Journal, Pages 232 and 233.

" 'Board convened as a board of county commissioners in a special session. Done by mutual consent, all members of board waiving notice of said meeting.

" 'Upon motion duly carried the following resolution was adopted:

" ' "Resolution.

" ' "That the county of Lincoln issue coupon bonds in the sum of $125,000 and such bonds to be redeemable in fifteen years and payable in twenty years, and to bear interest at the rate of five (5) per cent per annum, interest payable semi-annually at the times prescribed by law to secure funds for the repair and construction and improvement of a system of highways and bridges and free ferries in accordance with law in the county of Lincoln as authorized at the election held October 28th, 1911."

" 'Upon motion duly carried the following resolution was adopted:

" ' "Resolution.

" ' "That said coupon bonds be advertised for sale and that said bids for the purchase of said bonds be advertised for in a local newspaper, to-wit, the 'Eureka Journal,' and a New York newspaper, to-wit, the 'American Banker' of New York City, N. Y., for thirty days, said advertisement to state the amount of said bonds for sale and the conditions governing the submission and consideration of bids for same, advertisement being as follows:

" ' " "Advertisement.

" ' " "$125,000, Lincoln County, Montana, 5 per cent Road and Bridge Bonds.

" ' " "Notice.

" ' " "Notice is hereby given that sealed bids will be received by the county commissioners of Lincoln county in the state of Montana, at the office of the county clerk at Libby, Montana, until the 4th day of January, 1912, for the sale by the said county of $125,000 of road and bridge bonds, the denomination of said bonds to be either $500 or $1,000 each, or the issue to be divided between said denominations, payable in twenty years and redeemable in fifteen years, and to bear interest not to exceed five per cent per annum, interest payable at the office of the county treasurer in said county on the first day of January and July of each year. Bids will be opened in the council chambers of the board of county commissioners of Lincoln county, at Libby, Montana, on Thursday, January 4, 1912, at two o'clock P. M. A certified check for $6,000 made payable to John C. Friend, county treasurer of Lincoln county, shall be filed in a separate sealed envelope with the county clerk at least twenty-four hours before the time set for the opening of the bids, check to be returned to bidder if bid is rejected. The board reserves the right to reject any and all bids.

" ' " "SAMUEL CARPENTER, County Clerk." '

" (10) That thereafter and for thirty days prior to January 4, 1912, said advertisement for the sale of said bonds was published in said 'Eureka Journal' and said 'American Banker' of New York City, in the words and form as declared and adopted by said board and as in the foregoing paragraph set out, and no other advertisement or notice for the sale of said proposed bonds or any of them was ever made, had, or given.

" (11) That thereafter on January 4, 1912, at a meeting of said board the bid of N. W. Halsey & Co. of Chicago for said bonds was approved and accepted as the best bid. * * *

" (12) That thereafter on February 5, 1912, pursuant to notice theretofore given, the said board of county commissioners met in

special session at Libby, Mont., and passed a resolution directing that said bonds issue, and adopted a form of bond; and passed a further order directing that the said bonds be prepared and executed, and, when so executed, delivered to the county treasurer of Lincoln county and by him surrendered to said N. W. Halsey & Co. upon payment by it to the said county treasurer of the amount of said bid; which said proceedings had by said board and these resolutions passed and form of bond adopted, and as they appear upon the minutes of said meeting, are in detail as follows:

" 'Commissioners' Journal.

" 'The following resolution was passed by the board, all members voting aye:

" ' "Whereas, at an election duly called and held in Lincoln county, Montana, after notice thereof had been duly given for the time and in the manner required by law, more than a majority of the votes cast were in favor of authorizing the issue of the road and bridge bonds of said county to the amount of one hundred and twenty-five thousand dollars ($125,000) :

" ' "Therefore, be it resolved, by the board of county commissioners of Lincoln county, Montana, that for the purpose of constructing roads and bridges in Lincoln county, there are hereby directed to be issued one hundred and twenty-five (125) road and bridge bonds of one thousand dollars ($1,000) each, dated the first day of January, 1912, and becoming due twenty (20) years after date and payable at the option of Lincoln county fifteen (15) years after date, which said bonds shall bear interest, evidenced by coupons, at the rate of five (5) per centum per annum, payable semi-annually, on the first day of January and July in each year, both principal and interest of said bonds to be made payable at the banking house of N. W. Halsey & Company in the city of Chicago, Illinois.   Said bonds shall be sealed with the county seal, and said bonds and coupons shall be signed by the chairman of the board of county commissioners and by the county treasurer and be countersigned by the county clerk; and said bonds shall be substantially in the following form:

" ' "No. ——.                                              $1,000.

" ' "United States of America.

" ' "State of Montana.

" ' "Lincoln County Road and Bridge Bond.

" ' "Know all men by these presents, that the county of Lincoln, in the state of Montana, for value received, hereby promise to pay to the bearer one thousand dollars, lawful money of the United States of America, on the first day of January, 1932, with interest on the said sum from the date hereof until paid at the rate of five (5) per centum per annum payable semi-annually on the first day of January and of July in each year on presentation and surrender of the interest coupons hereto attached. Both principal and interest of this bond are hereby made payable at the banking house of N. W. Halsey & Company in the city of Chicago, Illinois. This bond is redeemable at the option of Lincoln county at any time after January 1, 1927. This bond is issued by the county of Lincoln for the purpose of constructing roads and bridges in said county, pursuant to the provisions of section 2905 *et seq.* of the Political Code of Montana, and of an election duly called and held in conformity with the resolution of the board of county commissioners of said county duly passed. And it is hereby certified and recited that all acts, conditions and things required by the laws and the Constitution of the state of Montana to be done precedent to and in the issuance of this bond have been properly done, happened and been performed in regular and due form as required by law, and that the total indebtedness of the said county, including this bond, does not exceed the constitutional or statutory limitations. In witness whereof, the board of county commissioners of Lincoln county, Montana, have caused this bond to be signed by the chairman of said board and by the county treasurer, counter-signed by the county clerk, with the county seal hereto affixed and the coupons hereto attached to be executed by the engraved

facsimile signatures of said officers, this first day of January, 1912.

" ' " ——————————, Chairman.

" ' " Countersigned:

" ' " ——————————, County Clerk.

" ' " Signed and registered:

" ' " ——————————, County Treasurer.

" ' " Form of Coupon.

" ' " On the first day of $\frac{\text{January,}}{\text{July,}}$ 19—, the county of Lincoln, Montana, promises to pay to bearer twenty-five dollars ($25.00) at the banking house of N. W. Halsey & Company in the city of Chicago, Illinois, for interest due that day on its road and bridge bond, dated January 1, 1912.

" ' " No. ——.

" ' " ——————————, Chairman.

" ' " ——————————, County Treasurer.

" ' " Countersigned:

" ' " ——————————, County Clerk."

" 'Said bonds, when executed as herein provided, shall be delivered to the county treasurer, who shall register the same in the books of his office and shall thereupon deliver the same to the purchasers thereof on receiving payment therefor.

" 'Upon motion duly carried board adjourned to Monday, March 4, 1912, at ten o'clock A. M., to meet in regular session as provided by section 2891 of the Revised Codes of Montana of 1907.

" 'This to be due and legal notice to all members of the board to be present at regular quarterly meeting, March 4th, 1912.

" 'PAUL D. PRATT,

" 'Chairman Board of County Commissioners.

" 'Attest: SAMUEL CARPENTER, County Clerk.'

"(13) That the proceedings for the issuance of said bonds are invalid, and said bonds, if issued, are and will be illegal, void, and invalid for the following reasons, among others, to-wit:

"(1) That each and all of the proceedings had and taken by said board of county commissioners relative to said proposed bond issue at said meeting of September 18, 1911, and subsequent thereto, are illegal and void for the reason that no legal or sufficient notice of said meeting was given. That the minute entry notice of September 9, 1911, purported to be given is illegal, fatally defective, and void, for the reason that it fails to specify the business to be transacted at said proposed meeting, and that public notice of said meeting, or business to be transacted thereat, was not given as required by law.

"(2) That said board of county commissioners, in all proceedings had and taken by it relative to said proposed bond issue, has acted upon and treated said proposed bond issue and the various purposes for which the funds to be realized therefrom are to be used as one single and entire proposition and purpose, and submitted the same to the electors of said Lincoln county, and said electors voted thereon as one entire proposition, and plaintiff alleges that said proposed improvements for which said bonds are attempted to be issued and the purposes of said proposed bond issue do not constitute a 'single purpose' within the meaning of the provisions of the Constitution and laws of this state, but in fact constitute numerous separate and distinct purposes as follows: First, that the proposed highway from the eastern boundary of Lincoln county, running thence westerly through Trego and Fortine to the town of Eureka, and from thence to the village of Rexford, and from thence along the easterly and southerly side of the Kootenai river to the city of Libby, and thence continuing on the same side of said Kootenai river to the village of Troy, constitutes a separate and distinct 'single purpose' itself. Second, that the proposed construction of the steel bridge at Troy constitutes a separate and 'single purpose' in itself. Third, that the proposed construction of the steel bridge at Libby constitutes a separate and single purpose in itself. Fourth, that the proposed construction of the steel bridge at Rexford constitutes a separate and single purpose in itself. Fifth, that the construction and operation of each of said proposed ferries constitute each a separate and single purpose.

Sixth, that the proposed construction of each of 'such other branch roads leading to and connecting with said system of highways, bridges, and free ferries as the board of county commissioners may determine' constitute each a separate and single purpose, and that each of said propositions should have been submitted to the electors of said county as separate and distinct propositions, and that before submitting such propositions the board should have determined the amount of money necessary and required to be raised for the purpose of carrying out each of said separate propositions and should have given the electors an opportunity to declare separately, for or against any or all of said propositions, but that at said election said right was denied to said electors.

"(3) That the proceedings of the board of county commissioners for the calling of said special election, and the proclamation issued and published therefor, specify it to be one of the purposes of said proposed bond issue to raise funds for the construction of free ferries, but that at no place in said proceedings or in any subsequent proceedings had by said board relative to said proposed bond issue is it specified how many such ferries are to be constructed, or at what place such ferries or any of them are to be operated, and such proceedings are in said respects so indefinite and uncertain as to wholly fail to determine any of said matters relative to said ferries and failed to impart to the electors of said county any knowledge or information relative thereto. That said purpose for raising funds for said free ferries is an inseparable and interdependent part of the entire proposed bond issue, and of itself, on account of said defect in not stating said purpose, invalidates and makes null and void all the proceedings relative to the entire bond issue.

"(4) That the proceedings of the board of county commissioners for calling said special election, and the proclamation issued and published therefor, specify it to be one of the purposes of the proposed bond issue to raise funds by means of which 'there shall be constructed such other branch roads leading to and connecting with said system of highways, bridges, and free

ferries as the board of county commissioners determine'; and that at no place in said proceedings is there a more definite statement than as above recited, nor is there in said proceedings at any place any statement, order, or declaration, by said board of county commissioners, or at all, as to how many 'such other branch roads' are to be constructed, or where the same are to be located, or what termini, if any, they are to have, or what proportion of said funds are to be used and appropriated for the purpose of constructing said branch roads or any of them. That in this respect said proceedings and the whole thereof are entirely too indefinite and uncertain, and failed to impart to the elector or to anyone any definite or any knowledge or information relative to such proposed 'branch roads,' the number thereof, the location thereof, or the termini thereof, or the cost of construction of each or any or all of them, or at all, and that the purpose of raising funds for the construction of 'such other branch roads' was made an inseparable and interdependent part of said entire proposed bond issue, and that said uncertainty and indefiniteness in said proceedings and in said order calling said special election, and in said election proclamation, and throughout said proceedings relative to 'such other branch roads' and such proposed free ferries, makes indefinite and uncertain said entire proceedings relative to said proposed bond issue, and makes said proceedings illegal and void.

"(5) That said board of county commissioners, defendants herein, have exceeded the power given them by the Constitution and statutes of the state of Montana, in each and every step taken in or toward the issue of said bonds, or any of them, in this, to-wit: That they have included in the purpose of said proposed issue the construction of free ferries, and no power is given by the Constitution, nor the statutes of the state of Montana, to counties or boards of county commissioners, or to either of them, to issue coupon or other bonds to provide funds to be used for the construction of free ferries, and that the proposition of raising funds by means of said proposed bonds for the purpose of constructing such proposed free ferries is under said proceedings an inseparable and interdependent part of said entire proceeding.

"(6) That the advertisement of the proposed sale of said bonds, published in said 'Eureka Journal' and in said 'American Banker' of New York City, and each of them, is illegal and void, for the reason that, prior to adopting the form of said advertisement and publishing the same, said board of county commissioners wholly failed to pass any order adopting a form of said proposed bond; and said advertisement fails to definitely specify the denominations of said proposed bond, or the number thereof, or the date that said bonds are to bear, and fails to advise prospective purchasers that they are entitled to receive such amount or proportion of said bonds as they or any of them may desire to purchase, and fails to state that said bonds are also for free ferries.

"(7) That said bonds have not been legally or properly or at all advertised for sale as required by law, or at all, among other things in this: That the order of said board of county commissioners directing the issuance of said proposed bonds and fixing the form thereof was not made until the 5th day of February, 1912, and that since the making of said order none of said bonds as fixed and determined by said order have been advertised for sale as required by law, or at all, and that the said board of county commissioners intend to deliver said bonds and each of them as so fixed and determined by said order of February 5, 1912, without any or further advertisement for the sale thereof, and plaintiff verily believes and alleges that unless restrained by an order of this court said defendants will deliver said bonds and each of them to said N. W. Halsey & Co. without further or any advertisement for the sale of said bonds.

"(8) Plaintiff further alleges: That the form of bond adopted and ordered issued by said board of county commissioners on February 5, 1912, which form is fully set out in paragraph 11 of this complaint, is illegal and void for the reason that each of said bonds recites upon its face that 'this bond is issued by the county of Lincoln for the purpose of constructing roads and bridges in said county,' and makes no reference to the fact that a portion of said bonds were voted and are purported to be issued for the purpose of free ferries. That said statement in said

bonds as to their purpose is misleading, and that plaintiff as a taxpayer is entitled to have said bonds show, and in order to be legal said bonds should show, the purpose for which they were issued, so that all purchasers and subsequent holders thereof may be fully charged with knowledge of the purpose or purposes for which said bonds are issued. That, in view of the preceding proceedings had relative to said proposed bond issue, said form as so adopted by said board of county commissioners on said 5th day of February, 1912, is improper, illegal, and void and not in conformity with the proceedings had relative to said bond issue and is misleading for the reason that said bonds and each of them as proposed to be issued and delivered fail to recite upon their face, or at all, that the same are also issued for the purpose of raising funds for free ferries.

"(9) That said board of county commissioners are proceeding to issue said bonds in the form and pursuant to the order therefor made and adopted by said board on the 5th day of February, 1912. That said order directing the issuance of said bonds is at fatal variance with the proceedings theretofore had relative to said bond issue, and particularly at fatal variance with the order of September 18, determining the necessity for said bond issue, and directing said election to be called, and election proclamation published for said election, and with subsequent proceedings. particularly in this: That in all of said proceedings up to said 5th day of February, 1912, it was ordered and directed and proclaimed to be part of the purpose of said proposed bond issue to raise money to be used for the purpose of constructing highways, bridges, and free ferries, whereas said order of February 5 declares that said bonds be issued 'for the purpose of constructing roads and bridges in Lincoln county,' and makes no reference to and ignores the matter of free ferries for which a portion of said bonds were originally declared by said board of county commissioners, and voted by said electors, and that the issue of said bonds in the form prescribed by and pursuant to said order of February 5, 1912, is illegal and void, among other things on account of said fatal variance, and that in any event, before said bonds can be legally issued, it is necessary for said board

to pass a new order directing the issuance and the form of said bonds.

"(10) That the funds which will be realized from said bond issue, if consummated, will be and are grossly insufficient and inadequate in amount to effect or carry out all the purposes for which said bonds were voted, and that by reason of such inadequacy many of the purposes for which said bonds were voted and are purported to issue will be defeated and can neither be carried out nor effected from the funds to be realized from said proposed bond issue.

"(11) That the official ballots used at said election failed to state said proposition and the terms thereof explicitly and at length, and that the proposition as stated upon said ballot was not stated thereon as required by law, nor was it stated explicitly or at length, or sufficiently to fully or fairly advise the voter as to the proposition upon which he was voting.

"(12) That none of the proposed highways mentioned in said proceedings and proposed to be constructed from the funds to be realized from said proposed bond issue, except the old county road from the western boundary of Lincoln county and Rexford *via* Stryker, Fortine, and Eureka, have ever been laid out or have any existence whatsoever, and that at present there are no such county roads, and that no petition or petitions for the laying out or establishment of said roads or any of them have been signed or made by ten or a majority or any of the freeholders of the road district or districts or of any of the road districts for, or in which said proposed highways are to be laid out or constructed from said funds, and that no such or any petitions prior to the commencement of this action or at all have been filed with said board of county commissioners therefor.

."(13) That there is now no existing public highway, nor has there been any petitioned for by freeholders as required by law or at all, leading to, from, or across the Kootenai river at the proposed site of the proposed bridge at Rexford. That there is now no existing public highway, nor has there been any petitioned for by freeholders as required by law or at all, leading

to, from, or across the Kootenai river at the proposed site of the proposed bridge at Troy.

"(14) That no petition has ever been made or filed with said board of county commissioners by which it is made to appear, or at all, that it is necessary to keep or maintain any of the proposed public ferries proposed to be constructed from the funds to be realized from said bond issue, nor has there ever been made or filed with said board, or at all, any petition whatsoever requesting the establishment of any of said proposed free public or other ferries.

"(15) That the Kootenai river, across which said bridges are proposed to be constructed, is, at the point where said bridge at Rexford is to be constructed, a navigable stream, under the laws of the United States and the state of Montana, for the purpose of transportation of persons and freight between points in the Dominion of Canada and United States, and between points within the state of Montana. That none of said defendants have had, ever received, or now have any power or authority to construct any of said bridges across said navigable stream without first obtaining authority therefor from the government of the United States and from the state of Montana, which authority, or permission, has never been granted by either the government of the United States, or any of its officers, or the said state of Montana, to said defendants or anyone, except that since the commencement of this action, and on or about the 1st day of March, 1912, and at the instance of the defendants, a bill was passed by the Congress of the United States authorizing the construction of said bridges across the said Kootenai river, which said bill may become a law at any time upon the approval of the President, which bill the President has since approved."

1. The first contention of the appellant is that the board of [1] county commissioners was not legally in session on September 18. This contention is disposed of by a consideration of the fact that all of the members were present and acting as a board of county commissioners, pursuant to a previous resolution of the board; so that the question of notice of the meeting became alto-

gether immaterial.   (See *Morse* v. *Granite County,* 44 Mont. 78, 119 Pac. 286.)

2. It is also contended "that the order and notice of election [2] did not sufficiently describe the purpose of said bond issue, or the highways to be constructed; that they were too general and indefinite, and delegate to the board discretion as to the purposes for which the money should be expended, in allowing them to construct such ferries and branch roads as they may desire; and said order and notice were therefore void." We think the criticism is unmerited.   Section 2935, Revised Codes, merely provides that the notice of election shall clearly state the object of the loan.   This means the general object of the loan.   It is not necessary to specify all of the details.   So long as a reasonably comprehensive notice is given, the courts have no power to declare it insufficient.   Different states have different requirements; but, if our own statutory mandates are complied with, no other notice need be given.   (*Mansur* v. *City of Polson,* 45 Mont. 585, 125 Pac. 1002.)

Article XIII, section 5, of the state Constitution, provides that no county shall incur any indebtedness or liability for any single purpose to an amount exceeding $10,000 without the approval of a majority of the electors therein voting at an election provided by law.   This constitutional restriction is a limitation upon the authority of the board of county commissioners; it has no reference to the power of the people.   We agree with the learned counsel for the appellant that this provision was intended to vest in the electors of the county the power to determine whether a proposed indebtedness, exceeding $10,000, for the construction of certain contemplated improvements, shall be incurred.   But counsel place altogether too narrow and rigid a construction upon the constitutional and statutory provisions relating to the subject.   Unless expressly or impliedly prohibited from so doing by other constitutional declarations, the people of a county may spend their money for any object which they may desire.   The power of the board of county commissioners is limited, but that of the people themselves is unlimited, save as

heretofore suggested. They may intrust to the board the expenditure of their funds if they see fit. They may rely upon the judgment and discretion of the board to any extent they desire; and the only condition precedent to a delegation of authority by them is that the board shall give such notice of its contemplated action as will enable them to vote intelligently thereon and in such a way that it shall not become necessary to accept or reject one of two or more projects, which have no reasonable relation to each other, in order to express satisfaction or dissatisfaction with others which are improperly submitted as one general plan. It was therefore permissible for the people of Lincoln county to delegate to the board of county commissioners the power to exercise a reasonable discretion as to the details of the plan of contemplated improvements. The matter of constructing branch roads was simply a detail of the main project. Not any branch roads may be necessary. On the other hand, it may be found advisable, in carrying the general scheme into effect, to spend a portion of the money for branch roads. If it is, the power of the board in the construction thereof will be limited to such as are not independent improvements in themselves, but are necessary and germane to the main proposition.

The construction of a ferry is, ordinarily, a matter of relatively small expense. Unlike an expensive bridge across a river like the Kootenai, it may, we think, well be considered as a mere detail or incident of the highway. It seems to us it may be presumed that the people would unhesitatingly intrust to the board of county commissioners so relatively unimportant a detail as the selection of sites for ferries and the manner of construction thereof. A ''ferry'' is simply a movable portion of a highway where it crosses a stream. (*Hackett* v. *Wilson,* 12 Or. 25, 6 Pac. 652.)

3. It was sufficient to state the amount of money necessary **[3]** to accomplish the general purpose. (*Morse* v. *Granite County, supra.*)

4. Inasmuch as only those electors whose names appeared on the registration lists of 1910 were permitted to vote, it is con-

tended that the election was void.   All that the Constitution
requires is that the plan shall receive the approval of a majority
of the electors of the county voting at an election provided by
law.   Section 491, Revised Codes, declares that, at any special
election held for any purpose in any county, copies of the official
register and check list which were printed or written before and
used at the next preceding general election must be used, and no
new registration need be made.   It is claimed that this provision
is unconstitutional.   But the election should be held valid unless
[4]   it appears that a sufficient number of legal voters to have
changed the result were prevented from casting their ballots.
(*State ex rel. Fletcher* v. *Ruhe,* 24 Nev. 251, 52 Pac. 274.)   "An
election should not be made void on a mere abstraction not af-
fecting the result."   (*Weil* v. *Calhoun* (C. C.), 25 Fed. 865.)
"If a registry is had under an unconstitutional law and an elec-
tion held upon the basis of such registry, there can be little, if
any, doubt that the election will be held valid, unless it is shown
that a sufficient number of legal voters to have changed the re-
sult were prevented by such law from casting their ballot."   (6
Am. & Eng. Ency. of Law, 2d ed., p. 769.)   No such showing
was made in this case.

5. It is contended, also, that the ballot used did not sufficiently
state the proposition to be voted on.

Section 2938, Revised Codes, relates to forms of ballots to be
[5]   used at elections wherein any question or proposition of, or
relating to, bonds is submitted to the people.   It provides that the
ballot shall state the bonding proposition and the terms thereof
explicitly and at length.   We think the form of ballot was suffi-
ciently comprehensive and explicit.   It was not necessary to state
therein the course, termini, or exact location of the proposed
highway, or the number or location of the proposed bridges and
ferries.   The fundamental and initial question to be determined
in all cases is whether the people are willing to authorize the
commissioners to spend a definite amount of money for a certain
public improvement.   It was declared, in argument by counsel
for both sides, that Lincoln county, one of the new counties of

the state, is almost devoid of the necessary highway facilities to enable the people to get from one part of the county to another without great expense and loss of time. The resolution of the county commissioners recites that in their judgment it is essential to the future growth and prosperity of the county that an adequate system of highways, bridges, and ferries be constructed, all connected, and making accessible each city and town in the county. We know that large portions of the county are mountainous and that many large streams flow within its borders. The project as proposed does not deal with separate improvements, independent of each other, and disconnected in point of utility. It is one large scheme involving a *system* of highways, bridges, and free ferries. We think the employment of the word "system," qualified by the information that it relates to highways, bridges, and free ferries, which is descriptive of what the plan or system comprehends, was a sufficient compliance with the terms of the statute. The opportunity is perhaps as propitious as any which may occur for a declaration by this court that our constitutional and statutory laws were designed to clothe the boards of county commissioners of the state with large discretionary powers in dealing with projects like the one we have under consideration. Certain well-defined constitutional restrictions must at all times be recognized and observed; but, aside from these, the policy of the law is that the mere details of contemplated public improvements shall be left to their discretion. Where explicit statutory directions are given, they must, of course, be complied with; but all that is necessary in the initiation of a plan like the instant one is, in general, that the people shall be given an opportunity to intelligently exercise their judgment. If county boards and similar administrative bodies are to be continually harassed and hampered by the nice technicalities of the law, oftentimes lacking in substance and devoid of real merit, the settlement and development of this vast northwestern empire will be greatly impeded and retarded. As we read the statutes, the policy of the law-making bodies has been, rather, to make proceedings like the one in question as expeditious,

simple, and inexpensive as possible, to accomplish the desired result, always bearing in mind, as heretofore suggested, that the consent of the people must be founded in an intelligent understanding on their part of the general purpose for which the money is to be expended. In preparing the ballot it was only necessary to substantially follow the directions of the statute. (*Tinkel* v. *Griffin*, 26 Mont. 426, 68 Pac. 859.)

6. The form of bond omits any reference to ferries; but, as [6] we have heretofore decided that a ferry is merely a portion of the highway, the omission was immaterial.

7. We also regard the recital therein that all statutory and constitutional provisions of law have been complied with as immaterial, in view of the fact that this case will be determined before the bonds are issued.

8. Objection is made that no form of bond was adopted [7] prior to the advertisement for the sale. It is also contended that the bonds were not properly advertised for sale.

Section 2906, Revised Codes, provides that the board must fix the denomination of each bond and prescribe the form thereof. Section 2907, Revised Codes, provides that when the board *issues* any bonds, it is its duty to sell the same and give notice by advertisement of the time of the sale; such advertisement must state "the amount of such bonds for sale." It will thus be seen that it is not necessary to give the form of the bonds in the advertisement or even a description thereof. We find nothing in the law to warrant the conclusion that the form of bond must be adopted prior to the advertisement. An inspection of the advertisement as set forth in the amended complaint also leads to the conclusion that the bonds were properly and legally advertised for sale.

9. Counsel contend: "The various purposes for which the [8] bonds are to be issued and the various propositions submitted to the electors at said election do not constitute a single purpose within the meaning of the Constitution and the laws of this state." While it is true that the authorities are quite uniform that in bond elections each separate proposition must be separately voted upon, we have grave doubts that this rule of law is founded in constitutional provisions similar to our section

5 of Article XIII, *supra*. We know of no constitutional or statutory reason why the people may not vote on a dozen propositions combined, if they can intelligently do so. The reason of the rule of law is to be found in the fact that the courts have always been solicitous that the elector shall be given an opportunity to express his free and unhampered assent, or to express his dissent. (*Blaine* v. *City of Seattle,* 62 Wash. 445, 114 Pac. 164.) In the case just cited the court held that an ordinance providing for the submission to the people, as one project, of the question whether bonds should be issued for eight district improvements in no manner related to each other, was void because they could not freely and intelligently vote thereon. Other well-considered cases might be cited to the same point.

In the case of *Stern* v. *City of Fargo,* 18 N. D. 289, 26 L. R. A., n. s., 665, 122 N. W. 403, it appeared that a proposition was submitted to construct a waterworks plant and "an electric light plant in connection with the said pumping station for furnishing street and other lights and power." The court said: "It is contended that the two purposes or objects, namely, a pumping station and electric light plant, are made one by use of the phrase 'in connection.' No serious contention is made that without the use of such words an electric light plant and waterworks and pumping station would be separate and distinct from each other. It appears to us that subjects which are so different, and which have no natural or necessary connection, cannot be made one, and the law and the reasoning of the courts evaded by a play upon words." The resolution submitting the two distinct propositions as one was held void. The same court, in *Hughes* v. *Horsky,* 18 N. D. 474, 122 N. W. 799, held that the question of issuing bonds for a combined courthouse and jail could be properly submitted to be voted on as one proposition; but, where the plan was to construct separate buildings for each purpose, the questions of bonds for a courthouse and bonds for a jail should be separately submitted.

All of these cases (and they are all cited by the appellant) accord with our views of the law governing this case. But we do not agree with the construction placed upon the proposed

plan of the county board by counsel for the appellant. The distinction between a comprehensive single purpose, and two distinct purposes which have no natural relation to each other, is well illustrated by the decisions we have just noticed, and many others. For instance, the supreme court of Utah, in *State ex rel. Horsley* v. *Carbon, County,* 38 Utah, 563, 114 Pac. 522, held that a proposition to issue $30,000 county bonds, $25,000 to build bridges and $5,000 to build and repair roads, as one general object, did not state two purposes required to be separately submitted. The court said: "The purpose was one general object. A bridge across the streams in the country in question without some kind of a highway would be useless. A highway without bridges over the streams would be impracticable. Both are but parts of one general object. To say the purpose here was a union of two separate and distinct objects, one might as well say that a stated purpose to purchase a site for a specified sum for school purposes and to erect a school building thereon for another specified sum contained or related to two separate and distinct objects or purposes and proposed two separate appropriations for them, which would appear to be groundless."

The point is practically set at rest in this state by the cases of *Morse* v. *Granite County, supra; Hefferlin* v. *Chambers,* 16 Mont. 349, 40 Pac. 787; *Yegen* v. *Board of County Commrs.,* 34 Mont. 79, 85 Pac. 740; *Jenkins* v. *Newman,* 39 Mont. 77, 101 Pac. 625. In the last case this court held that the building of a bridge and the approaches thereto was a single purpose within the meaning of the constitutional limitation.

10. It is contended that the county of Lincoln had no authority [9] to issue bonds for the purpose of establishing free ferries. We have already held that, for the purposes of this action, a ferry is to be construed as a part of the highway and a necessary incident to the general plan. We regard the fact as altogether immaterial that express statutory authority to establish free public ferries was not given by the legislature until the year 1909. (See Sess. Laws 1909, Chap. 33, p. 37.)

11. It is also contended that the county has no power to bond [10] for unestablished roads, or bridges on unestablished roads.

Section 2894, Revised Codes, gives boards of county commissioners general power and authority to establish and maintain highways, ferries, and bridges, and sections 1390 *et seq.* point out the methods of procedure. Elliott on Roads and Streets section 328, page 343, is cited by counsel to the effect that in all cases the statute governs, and, where a particular mode of procedure is provided, that mode must be pursued, in order to give the county board jurisdiction to proceed, which is undoubtedly true. But again let us say that counsel give altogether too narrow and rigid a construction to the statutory provisions under which the respondent board has proceeded. In theory, at least, the entire body of electors of Lincoln county has acted. The statutes last quoted have reference to the powers and duties of county commissioners in particular cases. We have no doubt whatever that a board of county commissioners has power on its own initiative to establish highways, bridges and ferries when necessary. The only limitation of this power has reference to the cost of the project. But be that as it may, in the absence of constitutional restrictions or prohibitory legislation, the people of a county can establish and construct as many highways, bridges and ferries as they deem necessary and by whatsoever method of procedure they may elect. Incident to the authority given to issue bonds is the necessary power to proceed with the entire project for which the bonds are to issue.

But it is contended that the board may not be able, after selling the bonds and obtaining the proceeds thereof, to proceed with the construction of the highways, because the requisite number of freeholders may not petition therefor; and, again, it may not be able to acquire the rights of way. *Carlson v. City of Helena,* 39 Mont. 82, 17 Ann. Cas. 1233, 102 Pac. 39, is cited to the effect that it must first appear that the particular project can be carried out. This case is not in point. There the city had bound itself to acquire a particular water supply or none at all; it had devested itself of all discretion in the matter; while in the instant case, as we have seen, the project is comprehensive and, to a certain degree, elastic. The commissioners have been given authority to exercise a wise discretion as to the details of the

plan, and it is not to be presumed that in a sparsely settled country, such as is comprised for the most part in Lincoln county, they will not be able to proceed and finish the proposed system of highways, bridges and ferries, substantially in compliance with the mandate of the electors from whom their authority emanates.

12. It appears that permission was not received from the [11] Congress of the United States to construct bridges over the Kootenai river, which is a navigable stream, until after the bond election; and it is contended that this fact vitiated the proceedings. However, as permission has since been obtained, we think it would ill become a court of equity to reverse the judgment under the circumstances. The matter has resolved itself into a purely abstract proposition.

The judgment is affirmed. *Remittitur* forthwith.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.

(Submitted June 20, 1912. Decided June 25, 1912.)